IAN N. FEINBERG (SBN 88324)
ifeinberg@feinday.com
M. ELIZABETH DAY (SBN 177125)
eday@feinday.com
MARC BELLOLI (SBN 244290)
mbelloli@feinday.com
NICHOLAS MARTINI (SBN 237687)
nmartini@feinday.com
**FEINBERG DAY KRAMER ALBERTI
LIM TONKOVICH & BELLOLI LLP**
577 Airport Blvd., Suite 250
Burlingame, CA. 94010
Tel: 650.825.4300/Fax: 650 460-8443

*Attorneys for Plaintiff* BioCardia, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| BIOCARDIA, INC.<br><br>            Plaintiff.<br><br>    v.<br><br>nVISION MEDICAL CORPORATION, ARBORETUM VENTURES IV, LP, ASTIA ANGEL nVISION LLC, CATALYST HEALTH VENTURES (PF), L.P., CATALYST HEALTH VENTURES FOLLOW-ON FUND, L.P., CATALYST HEALTH VENTURES III, L.P., CATALYST HEALTH VENTURES, LP, CHV INVESTMENTS, LLC, CHV PARTNERS FUND III, L.P., CHV-E PARTNERS III, L.P., DRAPER ASSOCIATES INVESTMENTS, LLC, DRAPER ASSOCIATES RISKMASTER FUND II, LLC, DRAPER ASSOCIATES RISKMASTERS FUND III, LLC, EXCELESTAR VENTURES I, LLC, EXXCLAIM CAPITAL PARTNERS I, LP, FOGARTY INSTITUTE FOR INNOVATION, GOLDEN SEEDS nVISION MEDICAL, LLC, LIFE SCIENCES ANGEL INVESTORS VIII, L.L.C., LMNVC, LLC, AND SERAPH nVISION, LLC,<br><br>        Defendants. | CASE NO.  3:20-02829-VC<br><br>**BIOCARDIA, INC.'S OPPOSITION TO EXXCLAIM CAPITAL PARTNERS I, LP'S MOTION TO DISMISS, OR IN THE ALTERNATIVE, STRIKE PORTIONS OF BIOCARDIA'S FIRST AMENDED COMPLAINT**<br><br>Date:   July 16, 2020<br>Time:   10:00 a.m.<br>Crtrm: 4, 17th Floor<br>Judge: Hon. Vince Chhabria |

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ............................................................................................ 1

II.   RELEVANT FACTS ...................................................................................... 2

III.  ARGUMENT .................................................................................................. 4

    A.    The FAC Properly Alleges A Request For Unjust Enrichment That Requests Relief In The Form Of The Imposition Of A Constructive Trust And Can Also Survive As A Stand-alone Claim For Constructive Trust. ................................................................................ 4

    B.    A Constructive Trust Can Be Asserted As A Separate Claim. .......................................... 5

    C.    A Constructive Trust Is Appropriate Even If EXXclaim Committed No Wrongful Act In Acquiring The Res Because Its Retention Is Wrongful As Against BioCardia. ........................ 6

    D.    BioCardia Adequately Alleged A Res And That Its Constructive Trust Should Extend To Any Profits Traced To That Res. ................................................................................ 9

        1.    The res has been properly alleged: ........................................................................ 9

        2.    The res includes traceable product, here the funds obtained by EXXclaim for its nVision shares: ................................................................................................. 9

        3.    EXXclaim's cases are entirely distinguishable: ...................................................... 12

    E.    BioCardia Has Also Pled A Right To The Remedy Of Disgorgement Based On EXXclaim's Unjust Enrichment. ................................................................................ 14

    F.    BioCardia's Claims Are Cognizable Under Delaware Law. .............................................. 16

IV.   LEAVE TO AMEND .................................................................................... 19

V.    CONCLUSION .............................................................................................. 22

## TABLE OF AUTHORITIES

**Cases**

*21X Capital  Ltd. v. Werra*,
   No. C 06-04135 JW, 2008 WL 11355549 (N.D. Cal. Aug. 13, 2008) .................................... 16

*AboveGEM, Inc, v. Organo Gold Mgmt. Ltd.*,
   No. 10-cv-04789-PJH, 2019 WL 3859012 (N.D. Cal. Aug 16, 2019) .................................... 13

*Abrams v. Blackburne and Sons Realty Capital Corp.*,
   No. 2-19-CV-06947-CAS (AS), 2019 WL 8640656 (C.D. Cal. Dec. 12, 2019) ............... 10, 13

*Adams v. Jankouskas*,
   452 A.2d 148 (Del. 1982) ........................................................................................... 18, 19

*AE ex rel. Hernandez v. County of Tulare*,
   666 F.3d 631 (9th Cir. 2012) ............................................................................................. 2

*American Master Lease, LLC v. Idanta Partners, Ltd.*,
   225 Cal. App. 4th 1451 (2014) .................................................................................... 14, 15

*Aprahamian v. HBO & Co.*,
   531 A.2d 1204 (Del. Ch. 1987) ......................................................................................... 17

*Bartel v. Tokyo Elec. Power Co., Inc.*,
   371 F.Supp.3d 769 (S.D. Cal. 2019) ................................................................................. 16

*Blair v. Mahon*,
   104 Cal.App.2d 44 P.2d 832, 836 (1951) ............................................................................. 8

*Brodsky v Apple, Inc*,
   __ F.Supp.3d __, No. 19-CV-00712-LHK, 2020 WL 1694363 (N.D. Cal. April 7, 2020) ........ 4

*Bruton v. Gerber Prod. Co.*,
   No. 15-15174, 2017 WL 3016740 (9th Cir. Apr. 19, 2017) ..................................................... 4

*Cahill v. Liberty Mut. Ins. Co.*,
   80 F.3d 336 (9th Cir. 1996) ............................................................................................... 2

*Carpenters Local Union 721 v. Griggs*,
   No. CV-17-4460 DSF (MRWx), 2018 WL 6003577 (C.D. Cal. Nov. 5, 2018) ........................ 7

*Coleman v. Golkin, Bomback & Co.*,
   562 F.2d 166 (2d Cir. 1977) ............................................................................................. 11

*Crystallex International Corp. v. Petroleos De Venezuela, S.A.*,
   879 F.3d 79 (3rd Cir. 2018) ............................................................................................. 17

*Czuchaz v. Conair Corp.*,
   No. 13-CV-1901-BEN (RBB), 2014 WL 1664235 (S.D. Cal. Apr. 18, 2014) ........................ 16

*Delk v. Owen Financial Corp.*,
   3:17-cv-02769-WHO, 2017 WL 3605219 (N.D. Cal. Aug. 21, 2017) ...................................... 4

*Doe I v. Wal-Mart Stores, Inc.*,
   572 F.3d 677, 684 (9th Cir. 2009*)* ..................................................................................... 4

*Dyke v. Lions Gate Entertainment, Inc.*,
   No. SACV 13-454-JST (ANx), 2013 WL 12128771 (C.D. Cal. August 14, 2013) .................. 2

*First Nationwide Sav. v. Perry*,
  11 Cal. App. 4th 1657 (Cal.Ct. App. 1992) ................................................................ 4

*Fleer Corp. v. Topps Chewing Gum, Inc.*,
  539 A.2d 1060 (Del. 1988) ........................................................................................ 18

*Foman v. Davis*,
  371 U.S. 178 S.Ct. 227, 9 L.Ed.2d 222 (1962) ........................................................ 20

*Ghirardo v. Antonelli*,
  14 Cal.4th 39 (1996) ................................................................................................. 15

*GHK Associates v. Mayer Group, Inc.*,
  224 Cal. App. 3d 856 (1991) ............................................................................. 5, 7, 9

*Great–West Life & Annuity Insurance Co. v. Knudson*,
  534 U.S. 204 (2002) .................................................................................................... 9

*Hartford Cas. Ins. Co. v. J.R. Mktg., L.L.C.*
  61 Cal.4th 988 190 Cal.Rptr.3d 599, 353 P.3d 319 (2015) ....................................... 4

*Heckmann v. Ahmanson*,
  168 Cal. App. 3d 119 Cal. Rptr. 177, 188 (1985) .................................................... 10

*In re Green Field Energy Servs., Inc.*
  610 B.R. 760 (D. Del. 2019) ..................................................................................... 19

*In re Maxim Integrated Products, Inc. Derivative Litigation*,
  574 F.Supp.2d 1046 (N.D. Cal. 2008) ...................................................................... 17

*In re N. Am. Coin & Currency, Ltd.*,
  767 F.2d 1573 (9th Cir. 1985) .................................................................................... 9

*In re Unicom Computer Corp.*,
  132 F.2d 321 (9th Cir. 1994). ............................................................................... 9, 22

*In re Zoran Corp Derivative Litigation*,
  511 F.Supp.2d 986 (N.D. Cal. 2007) ................................................................... 10, 17

*Internet Direct Response, Inc. v. Buckley*,
  No. SA CV-09-1335 ABC (MLG), 2011 WL 835607 (C.D. Cal. Mar. 7, 2011) ...................... 12

*Kaupelis v. Harbor Freight*,
  No. SAVC 19-1203 JVS (DFMx), 2019 WL 6998661 (C.D. Cal. Oct. 9, 2019) ...................... 4

*Korea Supply Co. v. Lockheed Martin Corp.*,
  29 Cal. 4th 1134 (2003) ............................................................................................... 9

*Landwehr v. DuPree*,
  72 F.3d 726 (9th Cir. 1995) ....................................................................................... 11

*Leadsinge, Inc. v. BMG Music Pub.*,
  512 F.3d 522 (9th Cir. 2008) ..................................................................................... 20

*Leitner v. Sadhana Temple of New York*,
  No. CV13-07902 MMM (Ex), 2014 WL 12588643 (C.D. Cal. Oct. 17, 2014) ...................... 17

*Martin v. Kehl*,
  145 Cal. App. 3d 228 (1983) ................................................................................... 6, 8

*Meister v. Mensinger*,
  230 Cal. App. 4th 381 (2014) ................................................................... 16

*Microsoft Corp. v. Suncrest Enter.*,
  No. 03–5424, 2006 WL 1329881 (N.D. Cal. May 16, 2006) .............................. 5, 13

*Optional Capital, Inc. v. Das Corp.*,
  222 Cal. App. 4th 1388 (2014) ...................................................... 6, 8, 10

*Pang v. Kartsetter*,
  No. 14-cv-1362 CAB (DHB), 2015 WL 11348261 (S.D. Cal. Feb. 27, 2015) ........................ 10

*PMC, Inc. v. Kadisha*,
  78 Cal. App. 4th 1368 (2000) ................................................................... 20

*Professional Tax Appeal v. Kennedy-Wilson Holdings, Inc.*,
  29 Cal. App. 5th 230 (2018) ................................................................... 4

*Rojas v. Bosch Solar Energy Corp.*,
  386 F.Supp. 3d 1116 (N.D. Cal. 2019) ................................................................... 4

*Schock v. Nash*,
  732 A.2d 217 (Del. 1999) ................................................................... 18

*Shareholder Representative Services LLC v. RSI Holdco, LLC*,
  C.A. No. 2018-0517 KSM, 2019 WL 2207452 (Del. Chancery Court Feb. 21,2019) ....... 17, 18

*Synopsis v. Ubiquiti Networks, Inc.*,
  No. 17-cv-00516-WHO, 2017 WL 3485881 (N.D. Cal. Aug. 15, 2017) ................................... 4

*Teachers' Ret. Sys. of Louisiana v. Aidinoff*,
  900 A.2d 654n.25 (Del. Ch. 2006) ................................................................... 19

*Toys "R" Us, Inc. v. Esgro, Inc. (In re Esgro, Inc.)*,
  645 F.2d 794 (9th Cir.1981) ................................................................... 9

*Tronzo v. Biomet, Inc.*,
  156 F.3d 1154 (Fed. Cir. 1998) ................................................................... 13

*U.S. v. $3,127,977.28 in U.S. Currency*,
  237 Fed. Appx. 271 (9th Cir. 2007) ................................................................... 7

*United States v. Pegg*,
  782 F.2d 1498 (9th Cir. 1986) ...................................................... 6, 7, 8, 10

*Uzyel v. Kadisha*,
  188 Cal.App.4th 866 (2010) ................................................................... 14

*VFD Consulting, Inc. v. 21st Servs*,
  425 F.Supp.2d 1037 (N.D. Cal. 2006) ...................................................... 12, 13

*Wu v. Sunrider Corp.*,
  CV-4825-DSF (SSx), 2017 WL 6880087 (C.D. Cal. Oct. 10, 2017) ................................... 4

I.       INTRODUCTION

EXXclaim Capital Partners I, LP's ("EXXclaim") motion wrongly assumes that a constructive trust can never be imposed on the profits a shareholder[1] makes from selling stock with a value that was inflated by the wrongful use of intellectual property (here patents, patent applications and trade secrets) belonging to another entity, here, BioCardia, Inc. ("BioCardia"). But that incorrect assumption is bereft of legal underpinning.  This response will introduce and then subsequently provide a more detailed explanation in support of BioCardia's First Amended Complaint's adequate allegations of constructive trust, unjust enrichment and statutory causes of action against EXXclaim.

Importantly, and contrarily to the overall premise of EXXclaim's argument, there is no requirement that BioCardia plead that EXXclaim committed any wrong.  Rather, BioCardia was only required to plead, and did in fact plead, that EXXclaim wrongfully detained the proceeds of a res traceable to patents and trade secrets rightfully belonging to BioCardia, and/or that EXXclaim was unjustly enriched, even if innocently, by Sarna's and/or nVision's wrongs, resulting in EXXclaim wrongfully retaining that which rightfully belongs to BioCardia.  Moreover, EXXclaim does not appear to take issue with the factual predicate for BioCardia's claims.  Rather, EXXclaim appears to assert that those facts cannot support imposition of a constructive trust even though the First Amended Complaint (FAC) asserts that constructive trust is also, in part, the relief sought for EXXclaim's unjust enrichment as a consequence of the actions of Ms. Sarna and nVision.

As such, EXXclaim's motion to dismiss BioCardia's FAC should be denied because BioCardia adequately pled all the requirements for imposition of a constructive trust on the proceeds in EXXclaim's possession, under California Civil Code § 2223.  BioCardia seeks imposition of a constructive trust as a remedy for breach of contract and misappropriation of trade

---

[1] "Exxclaim Capital is a venture capital firm that prefers to invest in the pediatrics, health and wellness and digital health sectors. The firm was founded in 2014." https://pitchbook.com/profiles/investor/124751-62.  It engages for profit in entrepreneurial investments in early stage companies.

secrets.  The res has been sufficiently identified as the moneys EXXclaim received "based on how much Boston Scientific Corporation paid [EXXclaim] for [its] nVision shares resulting from Ms. Sarna's and nVision's wrongful conduct as herein alleged," *see, e.g.*, Dkt. 22 at ¶¶ 81-88, which is directly traceable to the Sarna Patent Family and BioCardia's trade secrets, which BioCardia alleges it owns.  Just as plainly, BioCardia has set forth the basis for an unjust enrichment claim that also asserts all of the necessary elements for the disgorgement of any form of benefit or consequential gain reaped by nVision and the Shareholder Defendants, including EXXclaim.

In these introductory remarks, it bears emphasis that on a motion to dismiss all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party; moreover, a complaint should not be dismissed unless there is no set of facts that can be alleged in support of the claim for relief.  *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 338 (9th Cir. 1996). Further, any pleading deficiency under the plausibility standard should allow for a further opportunity to replead where, as here, plausible facts can be pled to cure any perceived deficiency. *AE ex rel. Hernandez v. County of Tulare*, 666 F.3d 631, 637-38 (9th Cir. 2012) (recognizing that leave to amend should be granted with extreme liberality).  Indeed, the lone constructive trust dismissal cited by EXXclaim resulted in a dismissal without prejudice of a claim for constructive trust.  *Dyke v. Lions Gate Entertainment, Inc.*, No. SACV 13-454-JST (ANx), 2013 WL 12128771, at *3 (C.D. Cal. August 14, 2013).

If the Court is inclined to dismiss BioCardia's claims against EXXclaim, BioCardia respectfully requests that it be granted leave to amend those claims, including to make more explicit its claim for unjust enrichment that requests as relief both the imposition of a constructive trust and the disgorgement of the value of all that was taken and the profits attributable to the value of what was taken from BioCardia.

## II.    RELEVANT FACTS

In general, BioCardia does not dispute EXXclaim's statement of relevant facts because they are quoted directly from BioCardia's First Amended Complaint (FAC).  However, EXXclaim does choose to mischaracterize the FAC when it gives short shrift to the scope of the claims

BioCardia has specifically alleged against it.

EXXclaim is a named defendant in the second, third and fourth claims of the First Amended Complaint. Dkt. 22 at ¶¶ 81-86. The second claim is against "all defendants," and while styled as "For Imposition of Constructive Trust Based on Unjust Enrichment," it effectively pleads breach of contract by Surbhi Sarna, to wit, her duty to assign patents to BioCardia which were instead assigned to nVision, *Id*., and as *a remedy* for that breach of contract seeks imposition of a constructive trust against EXXclaim based on the amount Boston Scientific paid EXXclaim for its nVision shares "resulting from Ms. Sarna's and nVision's wrongful conduct." *Id*. at ¶¶ 81-88. Importantly, that count also makes clear that Ms. Sarna's breach is the predicate for an unjust enrichment claim against the Shareholder Defendants based on the wrongful detention of BioCardia's intellectual property resulting proximately from that breach. BioCardia's request for relief specifies the demand for a constructive trust that is based on the amount Boston Scientific paid the Shareholder Defendants for their nVision shares.

The third and fourth claims against nVision also name EXXclaim as a defendant and seek imposition of the same constructive trust based on EXXclaim's unjust enrichment, Dkt. 22 at ¶¶ 98, 109, founded upon Ms. Sarna's and nVision's misappropriation of BioCardia's trade secrets. *Id*. at ¶¶ 92-94; 103-10.

EXXclaim's assertion that BioCardia has failed to allege a "res" is also wrong. BioCardia alleges a res consisting of the Sarna Patent Family, Dkt. 22 at ¶¶ 81-86, and the BioCardia trade secrets misappropriated by nVision and Ms. Sarna. *Id*. at ¶¶ 92-94; 103-10. That the value of this res is presently unknown to BioCardia is of no moment; it is determinable after discovery when the amount "Boston Scientific Corporation paid [EXXclaim] for [its] nVision shares resulting from Ms. Sarna's and nVision's wrongful conduct as herein alleged" is known or calculable. *see Id*. at ¶¶ 81-88. In any event, there is no requirement that either the amount on which to impose a constructive trust or even its method of calculation be pleaded.

## III.    ARGUMENT

### A.    The FAC Properly Alleges A Request For Unjust Enrichment That Requests Relief In The Form Of The Imposition Of A Constructive Trust And Can Also Survive As A Stand-alone Claim For Constructive Trust.

"[T]he California Supreme Court recently confirmed that unjust enrichment can be a stand-alone cause of action. *See Bruton v. Gerber Prod. Co.*, No. 15-15174, 2017 WL 3016740, at *1 (9th Cir. Apr. 19, 2017) (relying on *Hartford Cas. Ins. Co. v. J.R. Mktg., L.L.C.* 61 Cal.4th 988, 1000, 190 Cal.Rptr.3d 599, 353 P.3d 319 (2015))." *Synopsis v. Ubiquiti Networks, Inc.*, No. 17-cv-00516-WHO, 2017 WL 3485881, at *23 (N.D. Cal. Aug. 15, 2017).  *See also Wu v. Sunrider Corp.,* No. CV-4825-DSF (SSx), 2017 WL 6880087, at *5 (C.D. Cal. Oct. 10, 2017).  *Accord*, *Kaupelis v. Harbor Freight*, No. SAVC 19-1203 JVS (DFMx), 2019 WL 6998661, at *9 (C.D. Cal. Oct. 9, 2019) ("Other courts in this district have rejected this argument [that there is no stand-alone claim for unjust enrichment], relying on the Supreme Court's decision in *Hartford,* citing *Wu* and *Hartford*.) *Cf. Brodsky v Apple, Inc,* __ F.Supp.3d __, No. 19-CV-00712-LHK, 2020 WL 1694363, at *14 (N.D. Cal. April 7, 2020) (implicitly recognizing the existence of a stand-alone claim for unjust enrichment, but rejecting it at the pleading stage where plaintiff pled the existence of a binding contract such that the complaint defeated an unjust enrichment claim).

"As interpreted by the Ninth Circuit and the California Court of Appeal, unjust enrichment occurs when one party receives benefits at the expense of another, and that the circumstances are such that it is unjust for the benefiting party to retain the benefit.  *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677 (9th Cir. 2009*); First Nationwide Sav. v. Perry*, 11 Cal. App. 4th 1657 (Cal.Ct. App. 1992)." *Delk v. Owen Financial Corp.*, No. 3:17-cv-02769-WHO, 2017 WL 3605219, at *7 (N.D. Cal. Aug. 21, 2017).   "The elements of a cause of action for unjust enrichment are simply stated as 'receipt of a benefit and unjust retention of the benefit at the expense of another.'" *Professional Tax Appeal v. Kennedy-Wilson Holdings, Inc.*, 29 Cal. App. 5th 230, 238 (2018) (citations omitted).  *Accord Rojas v. Bosch Solar Energy Corp.*, 386 F.Supp. 3d 1116, 1130 (N.D. Cal. 2019).

All of the FAC's claims against EXXclaim are premised on the Shareholder Defendants'

unjust enrichment at the expense of BioCardia.  As stated above, EXXclaim is a defendant in the second, third and fourth claims of the First Amended Complaint.  (Dkt. 22 at ¶¶ 81-86).  The second claim is against "all defendants," and while styled as "For Imposition of Constructive Trust Based on Unjust Enrichment," alleges the underlying breach of contract by Surbhi Sarna, to wit, her duty to assign patents to BioCardia which were instead assigned to nVision, Dkt. 22 at ¶¶ 81-86, as a consequence of which that unjust enrichment occurred.  Further, as *a remedy* for that breach of contract the second claim seeks imposition of a constructive trust against EXXclaim based on the amount Boston Scientific paid EXXclaim for its nVision shares "resulting from Ms. Sarna's and nVision's wrongful conduct."  *Id*. at ¶¶ 81-88.

The third and fourth claims also name EXXclaim as a defendant and seek imposition of the same constructive trust based upon unjust enrichment, based on Ms. Sarna's and nVision's misappropriation of BioCardia's trade secrets.  Dkt. 22 at ¶¶ 98, 109, *Id*. at ¶¶ 92-94; 103-10.  In sum, all three of these claims (Counts I-III of the FAC) fairly and succinctly allege that the Shareholder Defendants (including EXXclaim) received benefits that were unjustly retained at the expense of BioCardia.

**B.      A Constructive Trust Can Be Asserted As A Separate Claim.**

Under California law, "A constructive trust is a remedial device primarily created to prevent unjust enrichment; equity compels the restoration to another of property to which the holder thereof is not justly entitled."  *Martin*, 145 Cal. App. 3d at 237. (citations omitted).  A breach of contract can form the basis for a constructive trust.  *GHK Associates v. Mayer Group, Inc.*, 224 Cal. App. 3d 856, 878 (1991).

"Although Defendants technically are correct that constructive trust is a remedy, rather than a freestanding claim, as a matter of practice constructive trust commonly is pleaded as a separate claim and the Court will not grant summary judgment on this basis."  *Microsoft Corp. v. Suncrest Enter.*, No. 03–5424, 2006 WL 1329881, at *8 (N.D. Cal. May 16, 2006).  Moreover, even if BioCardia's claims were to be rejected on the basis that a claim for the imposition of a constructive trust cannot be freestanding, those claims are premised upon and articulated as arising

from EXXclaim's unjust enrichment, which is a freestanding and independent claim under California law.

EXXclaim labors hard to restrict the broad remedial purpose of constructive trust law, in the process seeking to eviscerate its application, inconsistent with and contrary to California law. "The Restatement of Restitution § 160 (1937) (hereinafter cited as "Rest.") describes the nature of a constructive trust: '[W]here a person holding title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it, a constructive trust arises.' A constructive trust is thus an equitable remedy *compelling a person who has property to which he is not justly entitled to transfer it to the person entitled.*" *United States v. Pegg*, 782 F.2d 1498, 1499-1500 (9th Cir. 1986) (citations omitted) (emphasis supplied).

Nor do the two California statutes establishing the basis for imposing a constructive trust operate to restrict that remedy. To the contrary: "In order to provide the necessary flexibility to apply an equitable doctrine to individual cases, *these sections [Cal. Civ. Code §§ 2223 and 2224] state general principles for a court's guidance rather than restrictive rules.*" *Martin v. Kehl*, 145 Cal. App. 3d 228, 237-38 (1983) (citations omitted) (emphasis supplied). As a result, "[a] constructive trust 'may be imposed in practically any case where there has been a wrongful acquisition or detention of property to which another is entitled.'" *Optional Capital, Inc. v. Das Corp.,* 222 Cal. App. 4th 1388, 1402 (2014).

### C.    A Constructive Trust Is Appropriate Even If EXXclaim Committed No Wrongful Act In Acquiring The Res Because Its Retention Is Wrongful As Against BioCardia.

EXXclaim asserts that BioCardia alleges no wrongful act against it, and therefore no constructive trust can be imposed against it. But the statute provides only that "[o]ne who wrongfully detains a thing is an involuntary trustee thereof, for the benefit of the owner." Cal. Civil Code § 2223. The statute does *not* require that EXXclaim wrongfully obtained the res, only that it was wrongfully detained by EXXclaim: "A constructive trust is thus an equitable remedy compelling a person who has property to which he is not justly entitled to transfer it to the person entitled." *Pegg*, 782 F.2d at 1499-1500 (citations omitted).

-6-

The law has also long been clear that it does not matter that EXXclaim obtained the property in question indirectly by way of nVision and not directly from BioCardia: "California Civil Code sections 2223 and 2224 do not require that the involuntary trustee acquire the trust res directly from its rightful owner, as a prerequisite for imposition of a constructive trust." *GHK Associates,* 224 Cal. App. 3d at 879-80. *See also Carpenters Local Union 721 v. Griggs*, No. CV-17-4460 DSF (MRWx), 2018 WL 6003577, at *3 (C.D. Cal. Nov. 5, 2018) ("A constructive trust remedy is therefore appropriate where an individual obtains property as the result of the wrongful act of another, even if the recipient violated no law or duty by receiving the property.").

Nevertheless, EXXclaim's motion spends unnecessary time in an effort to conflate these two adjacent but distinct statutes, which provide alternative bases for imposition of a constructive trust. Civil Code § 2223 requires no moral culpability in the acquisition of the property—just retention of property to which the constructive trustee is not entitled. *Pegg*, 782 F.2d at 1499-1500. Civil Code § 2224, on the other hand, does require some wrongdoing, though not necessarily even moral culpability: "One who gains a thing by fraud, accident, mistake, undue influence, the violation of a trust or wrongful act, is, unless he has some other and better right thereto, an involuntary trustee of the thing gained for the benefit of the person who would otherwise have had it." The two statutes provide alternative bases for imposition of a constructive trust under California law, *either* when an asset is gained by a wrongful act *or* when, as here, it has not been gained by a wrongful act but, nonetheless, has been wrongfully retained. *U.S. v. $3,127,977.28 in U.S. Currency*, 237 Fed. Appx. 271, 273 (9th Cir. 2007).

Here, BioCardia properly alleges that EXXclaim improperly ***detained*** money belonging to BioCardia "based on how much Boston Scientific Corporation paid [EXXclaim] for [its] nVision shares resulting from Ms. Sarna's and nVision's wrongful conduct as herein alleged." *See, e.g.*, Dkt. 22 at ¶¶ 81-88. No affirmative wrongful act by EXXclaim, other than wrongfully detaining money belonging to BioCardia, is required to impose a constructive trust on EXXclaim under California Civil Code § 2223.

This construction of California's statutes is consistent with the common law: "A

constructive trust is thus an equitable remedy compelling a person who has property to which he

is not justly entitled to transfer the property to the person entitled." *Pegg*, 782 F.2d at 1499,

citing *Blair v. Mahon,* 104 Cal.App.2d 44, 50, 230 P.2d 832, 836 (1951) (citing Rest. §

160); *Bainbridge v. Stoner,* 16 Cal.2d 423, 428, 106 P.2d 423, 427 (1940) (citing Rest. § 160).

The detention need only be inequitable to be subject to a constructive trust:

> The Restatement of Restitution § 160 (1937) … describes the nature of a
> constructive trust: "[W]here a person holding title to property is subject to an
> equitable duty to convey it to another on the ground that he would be unjustly
> enriched if he were permitted to retain it, a constructive trust arises." A constructive
> trust is thus an equitable remedy compelling a person who has property to which
> he is not justly entitled to transfer it to the person entitled. *Blair v. Mahon*, 104
> Cal.App.2d 44, 50, 230 P.2d 832, 836 (1951) (citing Rest. § 160); *Bainbridge v.
> Stoner*, 16 Cal.2d 423, 428, 106 P.2d 423, 427 (1940) (citing Rest. § 160) …

*Pegg*, 782 F.2d at 1499-1500 (9th Cir. 1986) (emphasis supplied). Hence, both the California

statutes by their terms and California's case law support the imposition of a constructive trust

here:

> In order to provide the necessary flexibility to apply an equitable doctrine to
> individual cases, these sections state general principles for a court's guidance rather
> than restrictive rules. (*Elliott v. Elliott* (1964) 231 Cal.App.2d 205, 211, 41
> Cal.Rptr. 686.) Thus, it has been pointed out that "a constructive trust may be
> imposed in practically any case where there is a wrongful acquisition or detention
> of property to which another is entitled." (*Weiss v. Marcus* (1975) 51 Cal.App.3d
> 590, 600, 124 Cal.Rptr. 297; *Estrada v. Garcia, supra,* 132 Cal.App.2d at p. 552,
> 282 P.2d 547; *Rankin v. Satir, supra,* 75 Cal.App.2d at p. 695, 171 P.2d 78.)

*Martin,* 145 Cal. App. 3d at 237-38. *See also Optional Capital, Inc. v. Das Corp.,* 222 Cal. App.

4th 1388, 1402 (2014) ("A constructive trust 'may be imposed in practically any case where there

has been a wrongful acquisition or detention of property to which another is entitled'"). A wrong

was committed by the Shareholder Defendants, including EXXclaim, when they detained money

rightfully belonging to BioCardia

And California law provides for the imposition of a constructive trust in a situation

involving simple negligence on the part of a debtor who wrongfully detains another's

property. *See* Cal. Civ. Code §§ 2223, 2224; *Toys "R" Us, Inc. v. Esgro, Inc. (In re Esgro,*

-8-

*Inc.),* 645 F.2d 794, 797 (9th Cir.1981); *GHK Assocs. v. Mayer Group, Inc.,* 224 Cal.App.3d 856, 878, 274 Cal.Rptr. 168, 182 (1990); 11 B.E. Witkin, *Summary of California Law: Trusts,* §§ 305(2), 306(2) (9th ed. 1990). *Cf. In re N. Am. Coin & Currency, Ltd.*, 767 F.2d 1573, 1575 (9th Cir. 1985) (California law recognizes negligence whereas Arizona law recognizes only active misconduct as a ground for imposing a constructive trust in favor of creditors). *See also In re Unicom Computer Corp.,* 132 F.2d 321, 325 (9th Cir. 1994) (applying California law of constructive trust to determine that bankruptcy debtor did not have right to property held for another so that its payment did not affect avoidable preference). Therefore, BioCardia has adequately alleged claims that defeat this motion to dismiss.

> **D.    BioCardia Adequately Alleged A Res And That Its Constructive Trust Should Extend To Any Profits Traced To That Res.**
>
> **1.    The res has been properly alleged:**

EXXclaim quotes the California Supreme Court's decision in *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1150 (2003) for the proposition that "a constructive trust requires 'money or property identified as belonging in good conscience to the plaintiff [which can] clearly be traced to particular funds or property in the defendant's possession.'" (quoting *Great–West Life & Annuity Insurance Co. v. Knudson,* 534 U.S. 204, 213 (2002)).

But there has been no pleading lapse. BioCardia properly alleged that EXXclaim detained money belonging in good conscience to BioCardia. And BioCardia alleged that the amount Boston Scientific paid EXXclaim for its nVision shares "result[ed] from Ms. Sarna's and nVision's wrongful conduct," and thus are the traceable product of the patents, patent applications and trade secrets nVision took and which rightfully belonged to BioCardia. (Dkt. 22 at ¶¶ 81-88).

> **2.    The res includes traceable product, here the funds obtained by EXXclaim for its nVision shares:**

A number of cases stand for the proposition that the beneficiary of a constructive trust may recover the wrongfully acquired or detained property *and* its traceable product, even if the product has been exchanged for cash. *See Heckmann v. Ahmanson*, 168 Cal. App. 3d 119, 135, 214 Cal.

Rptr. 177, 188 (1985) ("[U]nder a constructive trust upon money, the plaintiff is entitled to trace the fund to its ultimate product or profit."); *Pegg*, 782 F.2d at 1499-1500 n. 2 (constructive trust res "includes 'the direct product,' i.e., profit on and enhancement in value of the property traced into the trust"); *Abrams v. Blackburne and Sons Realty Capital Corp*., No. 2-19-CV-06947-CAS (AS), 2019 WL 8640656, at *17 (C.D. Cal. Dec. 12, 2019) ("The constructive trust extends to property acquired in exchange for that wrongfully acquired, and includes [any] profit on and enhancement in value of the property traced into the trust."); *Pang v. Kartsetter*, No. 14-cv-1362 CAB (DHB), 2015 WL 11348261, at *1 (S.D. Cal. Feb. 27, 2015) ("The beneficiary of a constructive trust may recover the wrongfully acquired or detained property and its traceable product."); *Optional Capital, Inc. v. Das Corp.*, 222 Cal. App. 4th 1388, 1402 (2014) ("Funds may be recoverable under a constructive trust theory where the plaintiff can trace the funds to monies in the defendant's possession.").

Thus, a constructive trust may properly be placed on the profits that EXXclaim made from the sale of its nVision shares to the extent that those profits resulted from nVision's theft of BioCardia's patent, patent applications and trade secrets. Nonetheless, EXXclaim appears to argue that BioCardia was required to identify the amount of money on which it seeks to impose a constructive trust so that they are free to spend the balance. (Dkt. 43 at 16:21-26). But BioCardia is not required to plead that, even if it knew it. *See In re Zoran Corp Derivative Litigation,* 511 F.Supp.2d 986, 1018 (N.D. Cal. 2007). ("There are no allegations as to the true strike price of the options, the number of options that were exercised, or that any backdated options were sold by defendants. Such facts are not necessary at the pleading stage and are issues to be resolved after discovery.")

And while EXXclaim contends (by way of a footnote) (Dkt. 43 at 15, fn. 1) that it was a mere shareholder and thus never owned the res and cannot be a trustee for something it never acquired, that assertion falls short of a legal defense to BioCardia's claims. BioCardia seeks to impose a constructive trust on something EXXclaim undeniably acquired and has retained – that is, funds directly traceable to the value of the res that nVision illegally took from BioCardia and

then transferred for value to Boston Scientific.  Absent that transfer, it is alleged, Boston Scientific would not have paid what it did for EXXclaim's shares in nVision.  Thus, BioCardia does not seek imposition of a constructive trust against EXXclaim for the assets purloined from BioCardia by Ms. Sarna and nVision, and BioCardia does not need to do so to state a constructive trust claim. The claim BioCardia pursues against EXXclaim properly seeks to impose the trust on the asset EXXclaim acquired as a result of Ms. Sarna's and nVision's wrongful conduct, which is the amount Boston Scientific paid EXXclaim for its nVision shares.

Although the case law has progressed beyond EXXclaim's effort to cabin constructive trust to a restricted form of relief that cannot "trace the fund to its ultimate product or profit," (*Heckmann*, *supra*), it is useful to note that the law of constructive trusts is consistent with resulting trust doctrine.  In that respect, the Ninth Circuit, in *Landwehr v. DuPree*, 72 F.3d 726, 735 (9th Cir. 1995), cited approvingly to the decision in *Coleman v. Golkin, Bomback & Co.*, 562 F.2d 166, 169 (2d Cir. 1977).  In *Coleman*, a corporation held an employee's stock option and matters progressed to a stockholder vote to dissolve the corporation, which occurred, following which willing stockholders advanced the purchase price to exercise that option, without the employee's knowledge. *Coleman*, 562 F.2d at 167-168.  Upon his learning that the profits of the option had been distributed to the other shareholders, the employee demanded his share of those profits.  *Id.* at 168.  Though the employee had no legal interest in the shares prior to their sale, the court held that he possessed an equitable interest based on his stock option agreement, which should have been protected by the corporation.  *Id*.

Importantly, the distribution of that stock to the other stockholders did not cut off the employee's equitable interest, as: "A distribution of assets by a corporation is not a sale, and the stockholders receiving the assets are not bona fide purchasers."  *Id*. at 169.  Therefore, the stockholders took their stock subject to a trust in favor of the employee, the court concluding that: "If the property in the hands of the corporation is burdened with a trust, it remains burdened with the trust when distributed to the stockholders, whether the stockholders have notice or not." *Id.* at 169.

### 3.    EXXclaim's cases are entirely distinguishable:

The cases argued by EXXclaim are inapposite because BioCardia alleges it had pre-existing rights to the Sarna Patent Family and BioCardia's own trade secrets that it literally owned.

For example, in *Internet Direct Response, Inc. v. Buckley*, No. SA CV-09-1335 ABC (MLG), 2011 WL 835607 (C.D. Cal. Mar. 7, 2011), the plaintiff sought to impose a constructive trust on the Superbalife website and the profits flowing from its use, even though it never claimed that the Superbalife website belonged to it.  In stark contrast, BioCardia claims that it possessed pre-existing property rights—namely*,* ownership of the Sarna Patent Family pursuant to Ms. Sarna's employment agreement with BioCardia and BioCardia's own trade secrets.  BioCardia seeks imposition of a constructive trust on the profits made from the sale of EXXclaim's stock in nVision and those profits are directly traceable to the assets to which BioCardia has always claimed ownership.

Additionally, *Buckley* arose in the entirely distinct context of a plaintiff seeking to add—after the fact—two judgment debtors to a judgment it had obtained against a lone defendant. In that situation, under California law, the plaintiff had to establish that the judgment debtor was the alter ego of the two would-be-new judgment debtors *and* that the latter had controlled the litigation and therefore received due process notice and opportunity to be heard by virtue of the proceeding that resulted in judgment against the lone defendant.  *Buckley*, 2011 WL 835607, at *2.  Here, by contrast, BioCardia has named EXXclaim as a defendant and has not pursued an alter ego claim.

Also as far off the mark is *VFD Consulting, Inc. v. 21st Servs*, 425 F.Supp.2d 1037 (N.D. Cal. 2006), which held that: "Plaintiff's constructive trust claim is similarly defective because Plaintiff has not shown that Defendants wrongfully possessed any property belonging to Plaintiff," *id.* at 1055.  In short, there the court already had granted summary judgment on plaintiff's claims, finding that plaintiff had not established the existence of a legally protected trade secret that could serve as the foundation for its claims of misappropriation of trade secrets and breach of contract. *Id.* at 1052.  So, plainly, the property interest asserted did not belong to Plaintiff.  Hence, the

constructive trust claim failed for want of a res to which wrongful possession could be ascribed. *Id.* at 1055.

We acknowledge the district court's alternate, one sentence determination, that a separate constructive trust claim is not available under California law. *VFD Consulting, Inc.*, 425 F.Supp.2d at 1055. But the point is essentially moot, as the FAC can be accurately construed as a request for the imposition of a constructive trust as an alternative remedy for relief from EXXclaim's unjust enrichment. As discussed above, the federal practice, even at the stage of summary judgment, appears to be *not* to dismiss a freestanding constructive trust claim that is otherwise supported by the pleading. *See Microsoft Corp.*, No. C 03-5424 JF (HRL), 2006 WL 1329881, at *8 (N.D. Cal. May 16, 2006). *See also Abrams v. Blackburne & Sons Realty Cap. Corp.*, No. 2:19-CV-06947-CAS (AS), 2019 WL 8640656 at *17 (C.D. Cal. Dec. 2, 2019) (denying motion to dismiss constructive trust claim because the pleading was sufficient to establish the res for purpose of attaching the property).

*Tronzo v. Biomet, Inc.*, 156 F.3d 1154 (Fed. Cir. 1998) was a patent infringement case, but the constructive trust appeared to be based on Florida state law claims for fraud based on a promise by Biomet to pay Tronzo a reasonable royalty on a patent if he obtained one, apparently the same patent on which Tronzo also sued Biomet for patent infringement. *Id.* at 1161. A constructive trust was unavailable under Florida law because the reasonable royalty was never paid – hence, there was nothing to restore to Tronzo.

*AboveGEM, Inc, v. Organo Gold Mgmt. Ltd.*, No. 10-cv-04789-PJH, 2019 WL 3859012 (N.D. Cal. Aug 16, 2019), which EXXclaim quotes extensively, stands for the unremarkable proposition that an unpaid amount allegedly due under a contract cannot be the subject of a constructive trust imposed on a creditor of the contracting party:

> Plaintiff argues that the Hong Kong Defendants owe it money damages for their breach of a contract, and in turn plaintiff points to money and property it alleges a third party obtained from the Hong Kong Defendants in the course of their business dealings. But identifying a party that received funds from one who breached a contract is not sufficient to impose a constructive trust.

*Id.* at \*4.  BioCardia is not seeking to impose a constructive trust on a third party that received funds from nVision; rather, BioCardia is seeking to impose a constructive trust on the specific funds that EXXclaim received for its nVision stock, the value of which is directly traceable to patents, patent applications and trade secrets rightfully belonging to BioCardia.

### E.    BioCardia Has Also Pled A Right To The Remedy Of Disgorgement Based On EXXclaim's Unjust Enrichment.

In concentrating exclusively on BioCardia's constructive trust theory, EXXclaim ignores that in seeking recovery for unjust enrichment (and on statutory grounds), BioCardia has demanded the remedy of non-restitutionary disgorgement.  Dkt. 22 at 29:7.  EXXclaim's omission is critical because disgorgement does not require "tracing"–as EXXclaim contends *may* be required to impose a constructive trust.  The elements of a plausible claim for disgorgement based on unjust enrichment have not been challenged by the motion to dismiss, and have been effectively pled in the First Amended Complaint.

California law applies the principles expressed in the Restatement Third of Restitution and Unjust Enrichment, § 51 ("Restatement").  Under California law, "profits subject to disgorgement include any form of consequential gains or other secondary enrichment 'that is identifiable and measurable on the facts of the case and not unduly remote.'"  *Uzyel v. Kadisha*, 188 Cal.App.4th 866, 894 (2010).  "The principal focus of [disgorgement] is ... unjust enrichment ... measured by the defendant's profits, where the object of restitution is to strip the defendant of a wrongful gain ….."  *American Master Lease, LLC v. Idanta Partners, Ltd.*, 225 Cal. App. 4th 1451, 1487 (2014).  But that "gain" need not be traced to a particular "res" in the defendant's possession, or even to a substituted asset held by the defendant, as may be the case when impressing a constructive trust.  Rather, with disgorgement, the "necessary causal relationship is … called the problem of attribution: whether the profits sought are properly 'attributable to the underlying wrong.'"  *Uzyel*, 188 Cal.App.4th at 892 n.17 (Restatement § 51).

Two further points are important to identify here.  First, the wrongdoer need not directly harm the injured party.  For example, a defendant required to disgorge its unjust enrichment may

merely have aided and abetted a breach of fiduciary duty owed to the victimized plaintiff, despite not itself owing such a fiduciary duty directly. *American Master Lease,* 225 Cal. App. 4th at 1486. This makes sense, of course, because under the Restatement the "misconduct" to be addressed is "an actionable interference by the defendant with the claimant's legal protected interests …" Restatement Third at § 51(1). Thus, the main focus is upon the interest that is to be protected, not the source of impairment.

Second, the Restatement distinguishes in § 51(3) between conscious wrongdoers who are enriched by misconduct and act (a) with knowledge of the underlying wrong to the claimant, and those who act (b) despite a known risk that the conduct in question violates the rights of the claimant. *See* § 51(3). Placing emphasis on this point, the Restatement explains in relation to subpoint "(b)" that in circumstances where "a risk of liability is known—the legal conclusion that a wrong has been committed may not be reached until after the fact. … [the Restatement] makes clear that one who chooses to act in such circumstances bears the risk of liability by a disgorgement measure." Restatement, Comment A.

Indeed, the Restatement anticipates that in circumstances involving breach of fiduciary duty or infringement of intellectual property, judicial intervention may be required to determine whether the defendant has violated the claimant's rights, thus blurring any distinction between conscious misbehavior and merely "self-interested objectives on the basis of colorable justification …" Restatement 3d of the Law – Restitution, § 3 comment (e). In such circumstances, "the actor takes the risk that conduct undertaken in good faith may prove to interfere with the protected interests of another." *Id*.

California's law harmonizes well with the Restatement: In *Ghirardo v. Antonelli*, 14 Cal.4th 39, 51 (1996), the Supreme Court recognized that the law of restitution broadly provides that a person "may be required to make restitution if he is unjustly benefited at the expense of another." The benefit may come by any form of advantage, and if the benefited party "knew, or should have known" of the other's mistake. *Id*. at 52. Thus, restitution is not restrained by restrictions of actual knowledge by the violator or the need to allege fraud. *See also Meister v.*

*Mensinger*, 230 Cal. App. 4th 381, 398 (2014), in which former shareholders of a liquidated corporation brought suit for breach of fiduciary duty and for constructive trust against a former CEO and CFO of a corporation that had transferred assets to a new corporation: "In particular, a person acting in conscious disregard of the rights of another should be required to disgorge all profit because disgorgement both benefits the injured parties and deters the perpetrator from committing the same unlawful actions again." *Id.* at 398-99.  All money obtained through an unfair business practice may be disgorged in order to deter the improper conduct.  *Id.*

At this stage of the proceedings, there is no basis to dismiss the First Amended Complaint, which effectively alleges unjust enrichment and statutory claims, and properly seeks relief from EXXclaim based on constructive trust and non-restitutionary disgorgement.

### F.      BioCardia's Claims Are Cognizable Under Delaware Law.[2]

nVision is a Delaware corporation. https://businesssearch.sos.ca.gov/CBS/Detail._ "The local law of the state of incorporation will be applied to determine the existence and extent of a shareholder's liability to the corporation for assessments or contributions and to its creditors for corporate debts."  Restatement (Second) of Conflict of Laws § 307.  Generally the law of incorporation will determine the liability of a shareholder.  *See 21X Capital  Ltd. v. Werra*, No. C 06-04135 JW, 2008 WL 11355549, at *4 fn. 4 (N.D. Cal. Aug. 13, 2008) ("The local law of the state of incorporation will be applied ... because (1) this is the law which the shareholders, to the extent that they thought about the question, would usually expect to have applied to determine their liability, (2) exclusive application of this law will assure uniform treatment of shareholders or of classes of shareholders and (3) this state will usually have the dominant interest in the determination of this issue."  Restatement (Second) of Conflict of Laws§ 307 (Comments)").

---

[2] BioCardia believes that the FAC properly states factually and legally supportable claims under both California and Delaware law.  Although EXXclaim has not addressed Delaware law in its motion, the Court may decide choice of law at the pleading stage *if* it has sufficient information to conduct the analysis. *Compare Bartel v. Tokyo Elec. Power Co., Inc.*, 371 F.Supp.3d 769, 790 (S.D. Cal. 2019) (sufficient information available to decide choice of law at pleading stage, *with Czuchaz v. Conair Corp.*, No. 13-CV-1901-BEN (RBB), 2014 WL 1664235, at *9 (S.D. Cal. Apr. 18, 2014) (choice of law determination premature at pleading stage).

*Accord, Leitner v. Sadhana Temple of New York*, No. CV13-07902 MMM (Ex), 2014 WL 12588643, at *16 (C.D. Cal. Oct. 17, 2014).

Should Delaware law apply to the claims against EXXclaim, BioCardia has met the necessary pleading elements:

> Under Delaware law, "unjust enrichment is the unjust retention of a benefit to the loss of another or the retention of money or property of another against the fundamental principles of justice or equity and good conscience." Ryan, 918 A.2d at 361. "A defendant may be liable even when the defendant retaining the benefit is not a wrongdoer and even though he may have received it honestly in the first instance." Id. The elements of unjust enrichment are: (1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and impoverishment, (4) the absence of justification and (5) the absence of a remedy provided by law. *Jackson Nat'l. Life Ins. Co.*, 741 A.2d at 393.

*In re Maxim Integrated Products, Inc. Derivative Litigation,* 574 F.Supp.2d 1046 (N.D. Cal. 2008). Indeed, selling shareholders who benefitted from backdated options may be subject to an unjust enrichment claim under Delaware law.  *In re Zoran Corp Derivative Litigation,* 511 F.Supp.2d 986, 1018 (N.D. Cal. 2007).

In a recent case that presents issues remarkably similar to this one, *Shareholder Representative Services LLC v. RSI Holdco, LLC*, C.A. No. 2018-0517 KSM, 2019 WL 2207452 (Del. Chancery Court Feb. 21,2019)[3], an acquirer of a company by merger "brought a third-party

---

[3]Unpublished Delaware Chancellery opinions, unlike unpublished California Appellate Court opinions, are citable under N.D. Cal. Local Rule 3-4 (e).  "Although these and several other Chancery Court opinions we rely on are unpublished, Delaware courts give such opinions substantial precedential weight.  *See Aprahamian v. HBO & Co.*, 531 A.2d 1204, 1207 (Del. Ch. 1987) ("An unreported decision [is] entitled to great deference"); 1–4 Corp. and Commercial Practice in DE Court of Chancery § 4.04, Lexis (2017) ("The mere fact that a case is not reported should not be taken to suggest that unpublished decisions are without precedential value. Emphatically to the contrary, unpublished letter and memorandum opinions, and even some oral rulings from the bench, are afforded a considerable precedential weight [in Delaware], especially in view of the fact that unreported decisions often are the only authority on point where novel issues are involved").  In predicting how the Delaware Supreme Court would resolve this issue, we thus give such opinions substantial precedential weight as well."  *Crystallex International Corp. v. Petroleos De Venezuela, S.A.*, 879 F.3d 79, fn. 8 (3d Cir. 2018).

-17-

claim for unjust enrichment against five (of over one hundred) of the selling stockholders." *Id.* at

*1. The court held that unjust enrichment claims were available under Delaware law even if the

selling stockholders did no wrong:

> Movants further contend the unjust enrichment claim should be dismissed because
> it seeks to hold stockholder personally liable for Radixx's alleged wrongs.  Under
> Delaware law, however, "[r]estitution is permitted even when the defendant
> retaining the benefit is not a wrongdoer." The Delaware Supreme Court has stated,
> "[r]estitution serves to deprive the defendant of benefits that in equity and good
> conscience he ought not to keep, even though he may have received those benefits
> honestly in the first instance, and even though the plaintiff may have suffered no
> demonstrable losses." Accordingly, any request for restitution does not require
> dismissal of the unjust enrichment claim.

*Id*. at *7.

Delaware law is also entirely consistent with the Restatement Third of Restitution and

Unjust Enrichment, §51 (Restatement).  That state likewise applies the Restatement's principles

of non-restitutionary disgorgement premised on unjust enrichment; indeed, its law is absolutely

clear that restitution premised upon unjust enrichment is not restrained by assertions of innocence:

"Restitution is permitted even when the defendant retaining the benefit is not a wrongdoer."

*Schock v. Nash*, 732 A.2d 217, 232 (Del. 1999).  This principle extends to non-restitutionary

disgorgement by a defendant "'even though he may have received those benefits honestly in the

first instance, and even though the plaintiff may have suffered no demonstrable losses.'"  *Id*.

quoting *Fleer Corp. v. Topps Chewing Gum, Inc.*, 539 A.2d 1060, 1063 (Del. 1988).  "Restitution

may require not only the restoration of the property to its rightful owner but also compensation or

reimbursement for the benefits enjoyed by the defendant through the use or possession of

plaintiff's property regardless of whether or not the defendant is classified as a wrongdoer." *Fleer,

359 A.2d.* at 1063.  *See also Shareholder Rep. Servs.*, 2019 WL 2207452, at *7, applying this

principle to the potential disgorgement of benefits by innocent shareholders.

Delaware law also provides for the creation of a constructive trust under the facts alleged

in the FAC, in order to prevent unjust enrichment.  *See Adams v. Jankouskas*, 452 A.2d 148, 152

(Del. 1982) (constructive trust may be imposed due to unfair conduct by the defendant that "causes

him to be unjustly enriched at the expense of another to whom he owed some duty).  Indeed, *Adams* recognizes that under Delaware law a constructive trust may be impressed in equity to protect against a defendant's obtaining property "in any other unconscientious manner, so that he cannot equitably retain the property." *Id.* at 152 n.4 (referencing language from 1 Pomeroy's Equity Jurisprudence § 166, at 210-11 (5th ed. 1941).  In surveying Delaware's law, its federal district court has explained that "a constructive trust is an equitable remedy of great flexibility and generality" and that "'[t]o prevail on a claim for unjust enrichment or imposition of a constructive trust [,] the Trustee must allege sufficient facts to plausibly show that (i) there was an enrichment; (ii) an impoverishment; (iii) a relation between the enrichment and the impoverishment; (iv) the absence of justification; and (v) the absence of a remedy provided by law.'" *In re Green Field Energy Servs., Inc.* 610 B.R. 760, 775 (D. Del. 2019) (citation omitted).

In applying these principles under Delaware law, it has been recognized that a constructive trust may require the disgorgement of an unearned benefit in the hands of a transferee that did not engage in the unjust or unequitable conduct towards the plaintiff that gave rise to the imposition of a trust in the first place.  *Teachers' Ret. Sys. of Louisiana v. Aidinoff*, 900 A.2d 654, 672 n.25 (Del. Ch. 2006).  As that court further discussed in the course of declining to dismiss a complaint with prejudice: "A requirement of that kind would seem to undercut much of the utility of the unjust enrichment cause of action, which is often deployed against persons who (although not acting with scienter themselves) are sufficiently aligned with a wrongdoer that they ought to disgorge an unearned benefit conferred upon them by the wrongdoer at the victim's expense." *Id.*

## IV.    LEAVE TO AMEND

If the Court were inclined to dismiss BioCardia's claims against EXXclaim, BioCardia would respectfully request that it be granted leave to amend those claims.  EXXclaim correctly points out that BioCardia amended its counterclaims in the Boston Scientific Case as a matter of right, Dkt. 43, and has a pending motion to amend those counterclaims a second time, Dkt. 60, and that BioCardia amended its complaint in this case once as a matter of right, Dkt. 22.

Notwithstanding this procedural history, the claims against EXXclaim are new and have

not previously been amended, so BioCardia's pleading has not previously been found deficient by the Court.  It is only the "repeated failure to cure deficiencies by amendments previously allowed" that would justify denying leave to amend based on earlier amendments.  *Leadsinge, Inc. v. BMG Music Pub.*, 512 F.3d 522, 532 (9th Cir. 2008), quoting *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962).  Accordingly, BioCardia respectfully submits that denial of leave to amend based on BioCardia's prior amendments would not be proper.

In addition to amending to remediate any elements found by the Court to be missing or inadequately pleaded (to the extent BioCardia properly can do so), BioCardia would also amend to allege torts committed by EXXclaim and the other Shareholder Defendants.  BioCardia did not name as defendants any of nVision's individual shareholders (other than, of course, Ms. Sarna herself who is a counterdefendant in the *BSC Case*).  Rather, all of the shareholder defendants are institutional investors, *i.e.,* venture capitalists.  Under California law, a shareholder can be found liable for the intentional torts of a corporation, including misappropriation of trade secrets, if the shareholders should have known that misappropriation was at the source of their profit from a sale of their stock.  *See PMC, Inc. v. Kadisha*, 78 Cal. App. 4th 1368, 1389 (2000) ("Further omitted from defendants' theoretical situation is the fact that defendants purchased a corporation whose sole assets were purportedly corruptly acquired resources. Liability imposed on a corporate shareholder, officer, or director who knows or has reason to know about tortious misappropriation under these circumstances and allows it to occur is *not* vicarious.").  BioCardia could, if required to do so, allege that EXXclaim, as an institutional investor, was negligent in either not performing "due diligence," or not uncovering in its "due diligence" the wrongful acts alleged against NVision and Ms. Sarna that form the basis for imposing a constructive trust on EXXclaim.

In particular, BioCardia would allege that, as institutional investors experienced in matters of intellectual property, EXXclaim (and the other Shareholder Defendants) knew or should have known through the exercise of reasonable care in their due diligence of and access to nVision and Ms. Sarna that: (1) Ms. Sarna started consulting with BioCardia on September 15,

2008 and became a full time employee of BioCardia on November 3, 2008 (FAC at ¶27) until

January 2012 (FAC at ¶29); (2) Ms. Sarna, as is common with all similarly-situated employees,

was obligated to assign to BioCardia inventions she made while working at BioCardia, subject

only to her proving that they were excluded by Labor Code § 2870 (FAC at ¶28); (3) Ms. Sarna

registered nVision as a Delaware corporation on September 28, 2009, the year after she joined

BioCardia but only registered it as doing business in California on February 21, 2012, shortly

after she left BioCardia[4]; (4) on January 25, 2011, while a BioCardia employee and a year before

Ms. Sarna left BioCardia, Ms. Sarna filed U.S. Provisional application No. 61/435,945 (the "'945

Provisional Application ") (FAC at ¶30); (5) Ms. Sarna subsequently filed three other published

applications claiming priority to the '945 Provisional Application; (FAC at ¶31); and (6) on

November 13, 2011, also while still a BioCardia employee, Ms. Sarna filed a provisional

application  entitled "Device and method to confirm occlusion of the fallopian tube" (the "'120

Provisional Application") and subsequently filed Application No, 14/357,875, which claimed

priority to the '120 Provisional (FAC at ¶33).  BioCardia would allege that the fact that all of

these patent applications were filed while Ms. Sarna was a BioCardia employee and assigned to

nVision shortly after her departure was not only sufficient to show that EXXclaim (and the other

Shareholder Defendants) knew or should have known that nVision could be based on patent

applications rightly belonging to BioCardia, but also sufficient to show that EXXclaim (and the

other Shareholder Defendants) knew or should have known that those patent applications and the

rest of nVision's technology could be based on BioCardia trade secrets.

But perhaps the most damning evidence that EXXclaim and the other Shareholder

Defendants knew or should have known that nVision was based on intellectual property

belonging to BioCardia is a document only produced to BioCardia by Boston in June 2020.  It

shows that in 2009, only the year after Ms. Sarna joined BioCardia and more than two years

---

[4] https://icis.corp.delaware.gov/Ecorp/EntitySearch/NameSearch.asp;
https://businesssearch.sos.ca.gov/CBS/SearchResults?filing=&SearchType=CORP&SearchCriter
ia=nVision++medical&SearchSubType=Keyword

before she left, she already had assigned to nVision a patent application on an invention she made while working for BioCardia.  The document captioned a "Technology Transfer Agreement" is "effective as of December 26, 2009 between Surbhi Sarna (the 'Founder'), and nVision Medical Corporation, a Delaware corporation," in which Ms. Sarna  purports to assign to nVision:

> "All rights, title and interests in and to all intellectual property arising out of or related to the 'nVision Medical; business plan, including, without limitation, all ideas, designs, techniques, processes, formulas, trade secrets, inventions, discoveries, improvements, research or development and test results, specifications, data, know-how, business methods, marketing plans, other business plans, strategies, forecasts, unpublished financial information, budgets, projections, business prospects, copyrights and trademarks (inclusive of all goodwill relate thereto), and the following trademark, copyright, and patent applications and registrations:

> 1. USPTO provisional patent application filed on or around September 29, 2009.

BioCardia is unaware of the contents or subject matter of the USPTO provisional application filed on or around September 29, 2009.  As a provisional, it is unavailable from the USPTO and, although it has been requested from BSC and Ms. Sarna, it has not as of yet been produced.  But the date of the Agreement and the date of provisional patent application it purports to assign to nVision, dates more than two years before Ms. Sarna left BioCardia, certainly at least gave EXXclaim and the other Shareholder Defendants reason to know that nVision's intellectual property might have been purloined from BioCardia.

## V.      CONCLUSION

EXXclaim's motion to dismiss should be denied because BioCardia adequately pled the basis for imposition of a constructive trust and the elements of unjust enrichment against it.  If the Court disagrees, BioCardia respectfully requests leave to amend.

June 19, 2020                    By  */s/ Ian N. Feinberg*
                                 Ian N. Feinberg

                                 FEINBERG DAY KRAMER ALBERTI LIM
                                  TONKOVICH & BELLOLI LLP

                                 Attorneys for Plaintiff BioCardia, Inc.

OPPOSITION MOTION TO DISMISS- 3:20-CV-02829-VC