ROBERT E. FREITAS (SBN 80948)
rfreitas@fawlaw.com
JESSICA N. LEAL (SBN 267232)
jleal@fawlaw.com
FREITAS & WEINBERG LLP
350 Marine Parkway, Suite 200
Redwood Shores, California  94065
Telephone:  (650) 593-6300
Facsimile:  (650) 593-6301

Attorneys for Defendant
EXXclaim Capital Partners I, LP

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BIOCARDIA, INC.,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>nVISION MEDICAL CORPORATION, ARBORETUM VENTURES IV, LP, ASTIA ANGEL nVISION LLC, CATALYST HEALTH VENTURES (PF), L.P., CATALYST HEALTH VENTURES FOLLOW-ON FUND, L.P., CATALYST HEALTH VENTURES III, L.P., CATALYST HEALTH VENTURES, LP, CHV INVESTMENTS, LLC, CHV PARTNERS FUND III, L.P., CHV-E PARTNERS III, L.P., DRAPER ASSOCIATES INVESTMENTS, LLC, DRAPER ASSOCIATES RISKMASTER FUND II, LLC, DRAPER ASSOCIATES RISKMASTERS FUND III, LLC, EXCELESTAR VENTURES I, LLC, EXXCLAIM CAPITAL PARTNERS I, LP, FOGARTY INSTITUTE FOR INNOVATION, GOLDEN SEEDS nVISION MEDICAL, LLC, LIFE SCIENCES ANGEL INVESTORS VIII, L.L.C., LMNVC, LLC, AND SERAPH nVISION, LLC,<br><br>　　　　Defendants | No. 3:20-cv-02829-VC<br><br>(Related Case No.  3:19-cv-05645-VC)<br><br>**EXXCLAIM CAPITAL PARTNERS I, LP'S NOTICE OF MOTION AND MOTION TO DISMISS BIOCARDIA, INC.'S SECOND AMENDED COMPLAINT**<br><br><br>Date:　　December 3, 2020<br>Time:　　10:00 a.m.<br>Ctrm:　　3, 17th Floor<br>Judge:　 Hon. Vince Chhabria |

<mark>Case 3:20-cv-02829-VC   Document 79   Filed 09/24/20   Page 2 of 19</mark>

**TABLE OF CONTENTS**

Page

I. THERE IS NO STANDALONE CLAIM FOR THE IMPOSITION OF A CONSTRUCTIVE TRUST OR DISGORGEMENT OF UNJUST ENRICHMENT ................................................................................................. 2

II. "NEGLIGENT INVESTING" IS NOT A CAUSE OF ACTION ................................... 3

III. BIOCARDIA FAILS TO ALLEGE THE FACTS REQUIRED TO SUPPORT THE IMPOSITION OF A CONSTRUCTIVE TRUST ....................................................... 8

    A. BioCardia Has Not Identified A Wrongful Act By EXXclaim Or Any Former Shareholder ................................................................................................. 8

    B. BioCardia Fails To Identify A "Res." ..................................................................... 9

    C. EXXclaim And The Other Former Shareholders Hold Nothing "Owned" By BioCardia ......................................................................................................... 10

IV. COUNT IV FAILS TO STATE A CLAIM ................................................................... 13

V. CONCLUSION ............................................................................................................... 13

## TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Abovegem, Inc. v. Organo Gold Mgmt.*,
 2019 U.S. Dist. LEXIS 139303 (N.D. Cal. Aug. 16, 2019) ...................................................... 12

*In re Advent Mgmt. Corp.*,
 104 F.3d 293 (9th Cir. 1997) ..................................................................................................... 9

*Albrecht v. Tkachenko*,
 Case No. 14-cv-05442-VC, 2015 U.S. Dist. LEXIS 61567 (N.D. Cal. May 11,
 2015) ......................................................................................................................................... 3

*Cooper v. Curallux LLC*,
 Case No. 20-cv-02455-PJH, 2020 U.S. Dist. LEXIS 148120
 (N.D. Cal. August 14, 2020) ..................................................................................................... 2

*Flores v. Emerich & Fike*,
 2008 U.S. Dist. LEXIS 49385 (E.D. Cal. June 17, 2008) ....................................................... 10

*Honolulu Joint Apprenticeship and Training Committee of United Ass'n Local
 Union No. 675 v. Foster*,
 332 F.3d 1234 (9th Cir. 2003) ................................................................................................... 9

*Internet Direct Response, Inc. v. Buckley*,
 2011 U.S. Dist. LEXIS 28344 (C.D. Cal. March 7, 2011) ...................................................... 11

*Lusson v. Apple, Inc.*,
 Case No. 16-cv-00705-VC, 2016 U.S. Dist. LEXIS 199494
 (N.D. Cal. June 20, 2016) .......................................................................................................... 3

*Sumer v. Carrier Corp.*,
 Case No. 14-cv-04271-VC, 2015 U.S. Dist. LEXIS 20731
 (N.D. Cal. Feb. 20, 2015) .......................................................................................................... 2

*Tronzo v. Biomet, Inc.*,
 156 F.3d 1154 (Fed. Cir. 1998) ............................................................................................... 11

*Ucp Biosciences, Inc. v. Am. Screening, LLC*,
 Case No. 20-cv-0886-NC, 2020 U.S. Dist. LEXIS 143043
 (N.D. Cal. August 6, 2020) ....................................................................................................... 2

*VFD Consulting, Inc. v. 21st Servs.*,
 425 F. Supp. 2d 1037 (ND. Cal. March 15, 2006) .................................................................. 11

*Wang v. Golf Tailor, LLC*,
 17-CV-00898-LB, 2017 U.S. Dist. LEXIS 103654 (N.D. Cal. July 5, 2017) .........................13

**State Cases**

*S. California Gas Leak Cases*
 7 Cal. 5th 391 (2019) ..................................................................................................3, 4

*Campbell v. Superior Court*,
 132 Cal. App. 4th 904 (2005) ............................................................................................8

*Communist Party v. 522 Valencia, Inc.*,
 35 Cal.App.4th 980 (1995) ................................................................................................8

*Embarcadero Municipal Improvement Dist. v. City of Santa Barbara*,
 88 Cal. App. 4th 781 (2001) ..............................................................................................2

*Filet Menu v. C.C.L. & G., Inc.*,
 79 Cal. App. 4th 852 (2000) ..............................................................................................4

*Frances T. v. Vill. Green Owners Ass'n*,
 42 Cal. 3d 490 (1986) ........................................................................................................4

*Gorham v. Gilson*,
 28 Cal. 18 479, 483-84 (1865) ........................................................................................11

*Habitat Trust for Wildlife, Inc. v. City of Rancho Cucamonga*,
 175 Cal. App. 4th 1306 (2009) ..........................................................................................8

*Korea Supply Co. v. Lockheed Martin Corp.*,
 29 Cal. 4th 1134 (2003) .....................................................................................................9

*Nelson v. Anderson*,
 72 Cal. App. 4th 111 (1999) ............................................................................................11

*Pacific Lumber Co. v. Superior Court*,
 226 Cal. App. 3d 371 (1990) ...........................................................................................11

*Seamen's Bank v. Superior Court*,
 190 Cal. App. 3d 1485 (1987) ...........................................................................................3

*Wyatt v. Union Mortg. Co.*,
 24 Cal. 3d 773 (1979) ........................................................................................................4

*Zumbrun v. USC*,
 25 Cal. App. 3d 1 (1972) .................................................................................................11

**Federal Statutes**

Defend Trade Secrets Act ................................................................................................................13

**State Statutes**

CA Bus. & Prof. Code § 16600 .......................................................................................................5

**Other Authorities**

https://web.archive.org/web/20090126234054/http://biocardia.com/ ............................................7

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on Thursday, December 3, 2020 at 10:00 a.m., or at such other date as may be agreed upon, in Courtroom 4 of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, California, the defendant EXXclaim Capital Partners I, LP ("EXXclaim") will, and hereby does, move the Court for dismissal of the following against EXXclaim: "Count II (Imposition of Constructive Trust Based on Unjust Enrichment) (Against All Defendants)," "Count III (Misappropriation of Trade Secrets under CUTSA) (Imposition of Constructive Trust Against Defendants Based on Their Unjust Enrichment)," and "Count IV (Misappropriation of Trade Secrets under the Defend Trade Secrets Act) (Imposition of Constructive Trust Against All Defendants)" of the plaintiff BioCardia, Inc.'s ("BioCardia") Second Amended Complaint.

EXXclaim seeks an order dismissing all of BioCardia's counts against it pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failing to state a claim upon which relief can be granted. EXXclaim requests the Court dismiss all of the counts against it with prejudice.

There are also a number of other pending motions in this case and in the related case, *Boston Scientific Corp. et al. v. BioCardia, Inc.*, 3:19-CV-05645-VC, that are dispositive of the claims asserted. In addition to the arguments set forth in its own motion to dismiss, EXXclaim hereby joins in full in the motions to dismiss filed by Surbhi Sarna and nVision Medical Corporation ("nVision"), including the request for dismissal based on BioCardia's failure to state a claim against Ms. Sarna and nVision. *See* Surbhi Sarna's Motion to Dismiss, *Boston Scientific Corp., et al. v. BioCardia, Inc.*, No. 3:19-CV-05645-VC; nVision's Motion to Dismiss, *BioCardia, Inc. v. nVision, et al.*, No. 3:20-cv-02829-VC (both filed September 24, 2020).

This motion shall be based on this notice of motion and motion, the supporting memorandum of points and authorities herein, the request for judicial notice, the pleadings and papers on file, and upon such further matters the Court deems appropriate.

**POINTS AND AUTHORITIES IN SUPPORT OF MOTION**

A request for the equitable remedies of a constructive trust or disgorgement of unjust enrichment must be based on a claim justifying the imposition of a remedy. *See Sumer v. Carrier Corp.*, Case No. 14-cv-04271-VC, 2015 U.S. Dist. LEXIS 20731, *8, 2015 WL 758314 (N.D. Cal. Feb. 20, 2015) ("Sumer's claim for 'unjust enrichment' is not a stand-alone cause of action, and is dismissed because Sumer fails to state a predicate claim warranting such relief."); *Embarcadero Municipal Improvement Dist. v. City of Santa Barbara*, 88 Cal. App. 4th 781, 793 (2001) ("A constructive trust is not a substantive device but merely a remedy, and an action seeking to establish a constructive trust is subject to the limitation period of the underlying substantive right."). BioCardia's claims against EXXclaim must again be dismissed, this time without further leave to amend, because BioCardia does not allege that EXXclaim participated in the alleged wrongdoing of which it accuses Ms. Sarna, and BioCardia has failed to identify any independent wrongdoing that might support the imposition of equitable remedies against EXXclaim.

**I.    THERE IS NO STANDALONE CLAIM FOR THE IMPOSITION OF A CONSTRUCTIVE TRUST OR DISGORGEMENT OF UNJUST ENRICHMENT.**

EXXclaim and the other former nVision Medical Corporation ("nVision") shareholders were originally sued on the basis of tagalong requests for the imposition of a constructive trust. They were not accused of any wrongdoing. EXXclaim and the other shareholders are still not accused of engaging in the conduct (alleged breach of contract and misappropriation of trade secrets) attributed to Ms. Sarna and nVision in Counts II, III, and IV of the complaint. "Disgorgement of Unjust Enrichment" has been added to the relief sought by BioCardia.

The "disgorgement" and "constructive trust" remedies sought by BioCardia in Counts II, III, and IV are not independent causes of action. *See Cooper v. Curallux LLC*, Case No. 20-cv-02455-PJH, 2020 U.S. Dist. LEXIS 148120, *21 (N.D. Cal. August 14, 2020) (citing *McBride v. Boughton*, 123 Cal. App. 4th 379, 387-388 (2004). *See also Ucp Biosciences, Inc. v. Am. Screening, LLC*, Case No. 20-cv-0886-NC, 2020 U.S. Dist. LEXIS 143043, *12 (N.D. Cal.

August 6, 2020) (citing *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015)) ("Under California law, there is no standalone cause of action for 'unjust enrichment' or 'restitution.'"); *Lusson v. Apple, Inc.*, Case No. 16-cv-00705-VC, 2016 U.S. Dist. LEXIS 199494, *8 (N.D. Cal. June 20, 2016) (citing *Hill v. Roll Int'l Corp.*, 195 Cal. App. 4th 1295 (2011)) ("The plaintiffs will not be able to proceed on a freestanding unjust enrichment claim because, under California law, '[u]njust enrichment is not a cause of action.'"); *Albrecht v. Tkachenko*, Case No. 14-cv-05442-VC, 2015 U.S. Dist. LEXIS 61567, *2, 2015 WL 2227607 (N.D. Cal. May 11, 2015) ("California does not recognize an independent cause of action for unjust enrichment."). No remedy can be had against EXXclaim on the basis of an allegation that Ms. Sarna or nVision breached a contract or misappropriated trade secrets, but BioCardia now claims that EXXclaim is liable to BioCardia because EXXclaim chose to make an investment in nVision that somehow harmed BioCardia.

## II.    "NEGLIGENT INVESTING" IS NOT A CAUSE OF ACTION.

BioCardia now alleges that EXXclaim acted improperly when it invested in nVision on the theory that EXXclaim knew or should have known that Ms. Sarna misappropriated intellectual property owned by her former employer, which BioCardia mistakenly claims it was. *See* Ms. Sarna's Motion to Dismiss BioCardia's Second Amended Counterclaim filed concurrently in the related case *Boston Scientific Corp., et al. v. BioCardia, Inc.*, Case No. 3:19-CV-05645-VC (herein joined and incorporated). This novel theory of "negligent investing" is not recognized under California law.

In California, those making investment decisions owe no duty of care to third parties. *See Seamen's Bank v. Superior Court*, 190 Cal. App. 3d 1485, 1490-91 (1987). The refusal of the California courts to recognize a duty of the type claimed by BioCardia is an aspect of the general rule that "liability in negligence for purely economic losses . . . is 'the exception, not the rule'" in California. *S. California Gas Leak Cases*, 7 Cal. 5th 391, 400 (2019) (citing *Quelimane Co. v. Stewart Title Guaranty Co.*, 19 Cal. 26, 58 (1998) ("Recognition of a duty to manage business affairs so as to prevent purely economic loss to third parties in their financial transactions is the

exception, not the rule, in negligence law.)). The primary exception to the economic loss rule, the existence of a "special relationship," *id.* (citing *J'Aire Corp. v. Gregory*, 24 Cal. 3d 799, 804 (1979)), has no applicability here, where there is no relationship at all between EXXclaim and BioCardia.

BioCardia's "negligent investing" theory is also suspect to the extent it amounts to an effort to render EXXclaim and its fellow former shareholders liable for the acts of nVision or its employees. A shareholder *qua* shareholder is never vicariously liable for the acts of a corporation, and direct liability is possible only upon satisfaction of a standard far more demanding than that suggested by the whimsical "should have known" allegations made by BioCardia. *See*, *e.g.*, *Frances T. v. Vill. Green Owners Ass'n*, 42 Cal. 3d 490, 503-04 (1986); *Wyatt v. Union Mortg. Co.*, 24 Cal. 3d 773, 785 (1979); *Filet Menu v. C.C.L. & G., Inc.*, 79 Cal. App. 4th 852, 866 (2000).

It is difficult to imagine any circumstance in which a non-controlling venture capital investor would be in a position that would allow the *Frances T.* standard to be met. BioCardia did not plead any facts that provide a basis for wondering, in the context of this case, whether there might ever be such a case.

The theory behind BioCardia's new cause of action is also inconsistent with the very foundations of Silicon Valley, the experience of companies from Fairchild to Intel to Apple to Google to PayPal to Snap to 23andme and beyond, and, we submit, a disguised weapon that might be employed in the pursuit of sexist accusations against female entrepreneurs like Ms. Sarna who can be portrayed as "too young" to succeed. EXXclaim and nVision's other investors wisely identified Ms. Sarna as a rising star, as Forbes did when it honored her as a member of its "30 Under 30 In Healthcare" list in 2014. BioCardia's shameful allegation that the investors should have "known" that Ms. Sarna's skill and entrepreneurial drive were suspect lacks a sound theoretical grounding, and there is nothing about Ms. Sarna's background that genuinely suggests reason for doubt about the legitimacy of her accomplishments.

It is often said that employee mobility is the foundation of Silicon Valley. The story of the "Traitorous Eight," who left Shockley Semiconductor Laboratory in 1957 to start Fairchild Semiconductor, has been told again and again. California Business & Professions Code section 16600, which prohibits non-compete agreements, is often cited as the explanation for the rise of Silicon Valley over Route 128 in Massachusetts. But BioCardia's new theory is based on the idea that venture investors should approach young founders with caution, and assume that they have stolen from past employers. Imagine how different history might have been had this been the ethic of the past.

Bill Hewlett was 26 and David Packard 27 when they started their company. Steve Jobs was 21 and Steve Wozniak 26 when Apple was established in 1976. Sergey Brin and Larry Page were students when they had the idea that led to Google. The PayPal Mafia and many others left companies, or started their own at young ages. Some of the famous and not so famous Silicon Valley founders were Ph. D.'s, and others were dropouts, but the collective experiences of this amazing group of people show how wrong it would be to adopt a new legal theory based on the idea that there is something questionable about young entrepreneurs setting out on their own after working for someone else, or reason for suspicion when a young founder, or a young female founder, appears to be on the way to success.

Nothing about the error of BioCardia's new theory is changed when the focus turns to Ms. Sarna. BioCardia suggests that investors like EXXclaim should have known that Ms. Sarna stole from her employer because she could not, as a young woman with a mere bachelor's degree from U.C. Berkeley, be expected to have come up with an idea worthy of investment on her own. *See* Dkt. No. 74 at ¶¶ 31, 154. Nonsense. Legitimate, hard earned success like Ms. Sarna's happens every day in this part of the world, and we are blessed to have so many driven young people who have proven able to change the world in various ways. There is no basis for a legal rule that brands young people, or young people who have been employed, as suspect, and BioCardia points to nothing other than demographic characteristics and trivialities in support of

its attempt to establish that EXXclaim should have identified Ms. Sarna as unworthy or incompetent.

The strangest aspect of BioCardia's new theory is the idea that EXXclaim should have been able to identify Ms. Sarna and nVision as involved in a business related to that of BioCardia. BioCardia is a cardiovascular company. nVision is focused on women's reproductive health. BioCardia's attempts to suggest a bridge between it and nVision border are a stretch.

BioCardia appears to suggest that there would have been something suspicious about the fact that products offered by both BioCardia and nVision are or employ catheters. That is comparable to a claim that investors should have identified Marc Benioff as a thief when he left Oracle to start Salesforce because Salesforce is a "software" company. Catheters are not new or unique to BioCardia, and there is nothing suggesting a connection between nVision's work and that of BioCardia that would have been revealed by the fact that both offered catheters. BioCardia's allegations do not genuinely identify any reason why EXXclaim would have, or could have, been able to identify BioCardia as involved in a field comparable to nVision, much less have reason to believe that Ms. Sarna misappropriated proprietary technology belonging to BioCardia.

BioCardia is masquerading in this case as a company deeply involved in women's health, as it desperately tries to grab a piece of Ms. Sarna's success, but it is only here that this charade is attempted. Here is the way BioCardia describes itself in its most recent Annual Report on Form 10-K: "We operate in only one business segment, which is a clinical-stage regenerative medicine company developing novel therapeutics for cardiovascular diseases with large unmet medical needs." *See* Related Case No. 3:19-CV-05645-VC, Request for Judicial Notice, Ex. J ("Part I, Item 1. Business. Corporate Information."). The words "woman" and "women" do not appear in BioCardia's 10-K. There is no basis in BioCardia's complaint, or in any facts that would have been available to EXXclaim, that would have suggested an industry connection between nVision and BioCardia, or provided any reason to suspect that Ms. Sarna had taken protectible intellectual property to nVision.

The discussion of BioCardia's "negligent investing" theory turns in an ironic direction when the corporate history facts discussed in Ms. Sarna's motion to dismiss are considered. BioCardia cannot keep the story of its history straight, yet it claims that EXXclaim should have known that BioCardia was a victim of wrongdoing by Ms. Sarna. BioCardia was not even Ms. Sarna's employer, much less a victim of inappropriate conduct by her.

The other aspect of BioCardia's attempt to manufacture a factual basis for a claim of "knowledge" is its focus on Ms. Sarna's demographic characteristics. BioCardia asserts that EXXclaim and the other early investors "knew that there was a likelihood that nVision's claimed technology and intellectual property actually belonged to or had been misappropriated from BioCardia because they knew or at least should have known through their due diligence of nVision that Ms. Sarna's age, education, and work experience were highly unusual for someone who allegedly came up with a medical device and technique so revolutionary that a company like Boston Scientific Corporation would value it at hundreds of millions of dollars." *Id*. (When EXXclaim and the other former shareholders made early investments in nVision, Boston Scientific was nowhere to be seen.) It is inconceivable that anyone aware of Ms. Sarna's work at nVision who knew anything about BioCardia would think that nVision had any connection to BioCardia. Remember that BioCardia's entire case is based on an evolving set of claims about what Peter Altman supposedly said to Ms. Sarna during a random 90-minute meeting about a project that never got off the ground. The complaint reveals no reason why BioCardia should be able to claim that EXXclaim "should have known" that BioCardia would one day try to sell itself as a women's health company in litigation.

Even the point of BioCardia's "negligent investing" presentation is unclear. Is the idea that EXXclaim performed an inadequate due diligence review of nVision before it invested, and did not discover the impossible to find connection between a company operating "in only one business segment, which is a clinical-stage regenerative medicine company developing novel therapeutics for cardiovascular diseases with large unmet medical needs" (or, better yet, https://web.archive.org/web/20090126234054/http://biocardia.com/) and a medical device

company focused on women's health? If so, why would a failure to understand give rise to a claim? Or is the allegation that EXXclaim was so absurdly thorough that it actually discovered a few unsuccessful attempts by BioCardia to pivot its cardiovascular products to applications that could have included the female reproductive system? What is it that EXXclaim "knew or should have known" that is sufficient to make it a wrongdoer for doing what every venture capital firm does every day in Silicon Valley?

In the end, BioCardia points to nothing that would suggest the misappropriation of intellectual property. There is no reasonable basis on which knowledge of these facts could transform EXXclaim's investment in nVision into a tort.

There is no claim for "negligent investing" in California, and no basis on which EXXclaim might be subjected to a disgorgement or constructive trust remedy because it made a bet on an inspiring young entrepreneur at an early stage.

### III. BIOCARDIA FAILS TO ALLEGE THE FACTS REQUIRED TO SUPPORT THE IMPOSITION OF A CONSTRUCTIVE TRUST.

Even when a cause of action is properly stated, which is not the case here, a constructive trust may only be imposed when the established conditions for that remedy are satisfied. BioCardia's complaint falls short in this regard as well.

A constructive trust may "only be imposed when three conditions are met: (1) the existence of a res, (2) the plaintiff's right to the res, and (3) the defendant's acquisition of the res by some wrongful act." *Habitat Trust for Wildlife, Inc. v. City of Rancho Cucamonga*, 175 Cal. App. 4th 1306, 1332 (2009); *Campbell v. Superior Court*, 132 Cal. App. 4th 904, 920, (2005); *Communist Party v. 522 Valencia, Inc.*, 35 Cal.App.4th 980, 990 (1995). *See also AJY International, Inc. v. Paldo Co., Ltd.*, Case No. 17-cv-00744-VC at Dkt. No. 65 (N.D. Cal. June 6, 2017). None of these elements is satisfied by the complaint.

#### A. BioCardia Has Not Identified A Wrongful Act By EXXclaim Or Any Former Shareholder.

As explained above, BioCardia has neither accused EXXclaim of participating in the breach of contract or trade secret misappropriation of which it accuses Ms. Sarna, nor

substantiated a new "negligent investing" cause of action. BioCardia has therefore failed to allege the acquisition of a res by EXXclaim as a result of a "wrongful act."

### B. BioCardia Fails To Identify A "Res."

The absence of a "wrongful act" aside, BioCardia fails entirely to identify a "res." A constructive trust is available only over "money or property identified as belonging in good conscience to the plaintiff [which can] clearly be traced to particular funds or property in the defendant's possession." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1150 (2003) (quoting *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 213 (2002)). *See also In re Advent Mgmt. Corp.*, 104 F.3d 293, 296 (9th Cir. 1997) ("Taylor makes no showing that Advent paid Taylor with wrongfully diverted Coastal funds as opposed to funds that Advent lawfully earned as compensation or commissions from Coastal."). It is only when the specific res can be identified and attached, "not where the plaintiff seeks to impose general personal liability as a remedy for the defendant's monetary obligations," that a constructive trust is a possibility. *Honolulu Joint Apprenticeship and Training Committee of United Ass'n Local Union No. 675 v. Foster*, 332 F.3d 1234, 1238 (9th Cir. 2003). The merger consideration received by EXXclaim and the other shareholders does not constitute a res over which a constructive trust might be imposed.

BioCardia alleges it is entitled to a constructive trust "over the unlawful benefits received as a result of Ms. Sarna's breaches of the Sarna Agreement." *See* Dkt. No. 75 at ¶¶ 166, 213 and 236. What are the "benefits?" How are they measured? What is "unlawful" about them? Which are the "particular" funds that constitute the "benefits" subject to the trust? BioCardia cannot say, and the complaint does not provide a basis on which the Court might be able to identify the "benefits" over which a constructive trust would be imposed.

BioCardia appears to want to impose a constructive trust on an undetermined and not readily determinable "amount of unjust enrichment," another way of describing the damages BioCardia seeks. The constructive trust remedy cannot be used this way. The purpose of a constructive trust is to prevent the transfer or loss of identifiable property that is the subject of

-9-   MOTION TO DISMISS
No. 3:20-cv-02829-VC


dispute in the action that provides the basis for the constructive trust. "Where the property sought to be recovered, or its proceeds, have been dissipated so that no product remains, the plaintiff cannot enforce a constructive trust and the plaintiff's claim is that of a general creditor. To obtain a constructive trust, 'the action generally must seek not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession.'" *Flores v. Emerich & Fike*, 2008 U.S. Dist. LEXIS 49385, *117-118, 2008 WL 2489900 (E.D. Cal. June 17, 2008) (dismissing request for a constructive trust) (citing *Great-West Life & Annuity Ins. Co.*, 534 U.S at 213-14). The undetermined "amount of unjust enrichment" (or "benefit") mentioned by BioCardia would not "restore" anything.

### C. EXXclaim And The Other Former Shareholders Hold Nothing "Owned" By BioCardia.

Yet another reason BioCardia is not entitled to a constructive trust is that it cannot establish a pre-existing right to a res. EXXclaim never had anything owned by, or returnable to, BioCardia.[1] BioCardia identifies EXXclaim as a former owner of nVision shares. BioCardia alleges that Boston Scientific Corporation acquired EXXclaim's shares in nVision in connection with an April 13, 2018 merger transaction. *See* ECF No. 75 ¶ 2. BioCardia alleges that EXXclaim sold its nVision shares to Boston Scientific Corporation for an unidentified "initial consideration," 90% of which was "paid in cash," 10% of which was "held in escrow," and "additional consideration for which shares *[sic]* is subject to an earnout based on nVision's performance." ECF No. 75 ¶ 17. These allegations do not identify property that was ever owned by BioCardia, or property in which BioCardia can claim a right, and nothing else in the possession or control of EXXclaim is identified in BioCardia's complaint.

---

[1] The complaint refers only to nVision when outlining the subject of the constructive trust. *See* Dkt. No. 75 ¶¶ 167, 214 and 237 ("a constructive trust should be imposed on nVision for the benefit of BioCardia on, among other things, (1) any monetary consideration paid by Boston Scientific and retained by nVision *[sic]*; (2) title to the '945 Provisional Application Family, the '120 Provisional Application Family, the '472 Application Family, and the Additional Provisional Applications and (3) the trade secrets and other intellectual property taken by Ms. Sarna, and nVision should be ordered to transfer or assign to BioCardia all of the forgoing."

BioCardia did not attempt to trace backward from EXXclaim's legitimate receipt of cash for shares to something that might be said in some sense to have belonged at some point to BioCardia, be it the identified patent and patent applications, or anything else. BioCardia made no effort to trace the "amount of [the Shareholder Defendants'] unjust enrichment," ECF No. 75 ¶ 164, however it would be identified, or the "amount Boston Scientific Corporation paid the Shareholder Defendants for their nVision shares," *id*., to any intellectual property or other property claimed to be owned by BioCardia.

BioCardia does not allege that it is the rightful owner of any shares of nVision Medical Corporation stock, or claim a right to the shares EXXclaim surrendered in the merger transaction. As shareholders, EXXclaim and the other former shareholders never owned any patents or patent applications, and BioCardia does not claim they did. Shareholders "own neither the property nor the earnings of the corporation" and "own only stock." *Nelson v. Anderson*, 72 Cal. App. 4th 111, 126 (1999). The shareholders never owned any of nVision's assets. *See Pacific Lumber Co. v. Superior Court*, 226 Cal. App. 3d 371 (1990); *Gorham v. Gilson*, 28 Cal. 479, 483-84 (1865). "[O]ne cannot be held to be a constructive trustee of something he had not acquired." *Zumbrun v. USC*, 25 Cal. App. 3d 1, 14-15 (1972).

BioCardia does not allege that the shareholders took shares of nVision, or any other property, directly from BioCardia. *See, e.g., Internet Direct Response, Inc. v. Buckley*, 2011 U.S. Dist. LEXIS 28344, *25-26, 2011 WL 835607 (C.D. Cal. March 7, 2011) ("Plaintiff's request for a constructive trust fails for the fundamental reason that it has not shown that it is the rightful owner of either the Superbalife website or any profits derived from Fred Buckley's use of the website."); *VFD Consulting, Inc. v. 21st Servs.*, 425 F. Supp. 2d 1037, 1055 (ND. Cal. March 15, 2006) ("Defendants are also correct that Plaintiff's constructive trust claim is similarly defective because Plaintiff has not shown that Defendants wrongfully possessed any property belonging to Plaintiff."); *Tronzo v. Biomet, Inc*., 156 F.3d 1154, 1161 (Fed. Cir. 1998) (finding constructive trust (under Florida law) unavailable in patent infringement action where the only transfer of "property" was transfer of information; lost profits could not properly be considered plaintiff's

property as he never possessed profits or transferred them to defendant). Because an "amount paid" by Boston Scientific Corporation to EXXclaim was not money that was taken directly from BioCardia, or even money taken in exchange for property taken from BioCardia, there is no basis for a constructive trust.

The analysis by Chief Judge Hamilton in the recent case of *Abovegem, Inc. v. Organo Gold Mgmt.*, 2019 U.S. Dist. LEXIS 139303, *6-9, 2019 WL 3859012 (N.D. Cal. Aug. 16, 2019), explains why BioCardia's allegations are insufficient to justify a constructive trust:

> Plaintiff must demonstrate "money or property identified as belonging in good conscience to the plaintiff which can clearly be traced to particular funds or property in the defendant's possession." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1150 (2003). A constructive trust is available where the specific res or funds can be identified, "but not where the plaintiff seeks to impose general personal liability as a remedy for the defendant's monetary obligations." *Honolulu Joint Apprenticeship and Training Committee of United Ass'n Local Union No. 675 v. Foster*, 332 F.3d 1234, 1238 (9th Cir. 2003).
>
> With respect to its pending motion, plaintiff has not sufficiently demonstrated that it is likely to obtain this equitable remedy because it has not shown that it has a right to any particular property wrongfully held by OG Int'l. Plaintiff argues that the Hong Kong Defendants owe it money damages for their breach of a contract, and in turn plaintiff points to money and property it alleges a third party obtained from the Hong Kong Defendants in the course of their business dealings. But identifying a party that received funds from one who breached a contract is not sufficient to impose a constructive trust. In short, "the restitution it seeks must be equitable. It is not. . . . There is no indication that the funds are specific or identifiable, or that [plaintiff] seeks anything other than monetary compensation on a breach of contract claim." *Id*.

BioCardia is in no better a position.

To support a constructive trust, the merger consideration provided by Boston Scientific Corporation would have to be directly traceable to a res considered BioCardia's property, but this is not possible under the allegations of BioCardia's pleadings. BioCardia has no claim on the pre-merger assets of Boston Scientific Corporation and no right to payments received by the former shareholders through their business dealings with Boston Scientific Corporation. The former shareholders are not alleged to be wrongly holding anything owned by BioCardia. A constructive trust is therefore unavailable as a matter of law.

**IV.   COUNT IV FAILS TO STATE A CLAIM.**

Because BioCardia's claims in the related *Boston Scientific Corp. et al. v. BioCardia, Inc.* Case No. 3:19-CV-05645-VC are virtually identical to the claims BioCardia asserts here, and because a number of those same arguments apply with equal force to the complaint filed here, EXXclaim incorporates the counterdefendants' arguments made in their contemporaneously filed motions to dismiss.

BioCardia did not assert its Count IV for trade secret misappropriation under the Defend Trade Secrets Act ("DTSA") in the related Case No. 3:19-CV-05645-VC. However, Count IV should be dismissed for the same reasons Count III should be dismissed: BioCardia has failed to allege that it possessed secret information and that its alleged trade secrets were reasonably protected. Count IV should also be dismissed because the Second Amended Complaint fails to sufficiently allege misappropriation after the effective date of the DTSA. *See* Dkt. 75, ¶ 216. "The DTSA applies only to misappropriations that occurred 'on or after the date of [DTSA's] enactment'—May 11, 2016." *Wang v. Golf Tailor, LLC*, 17-CV-00898-LB, 2017 U.S. Dist. LEXIS 103654, *9, 2017 WL 2861111 (N.D. Cal. July 5, 2017). The Second Amended Complaint merely states that "at least some of the acts of misappropriation, including at least the disclosure or use of the BioCardia Trade Secrets, occurred after the May 11, 2016 effective date of the Act." *See* Dkt. 75, ¶ 216. This bare recitation of the legal standard for the application of the DTSA with no supporting factual allegations is insufficient to state a claim.

**V.   CONCLUSION.**

No actionable wrongdoing attributable to EXXclaim is identified in BioCardia's complaint. BioCardia has had ample opportunity to establish a basis for dragging EXXclaim and its fellow former shareholders into this case, but it has failed to do so. BioCardia's complaint against EXXclaim and the other former shareholders should be dismissed without leave to amend.

| | |
|---|---|
| Dated: September 24, 2020 | ROBERT E. FREITAS<br>JESSICA N. LEAL<br>FREITAS & WEINBERG LLP<br><br>*/s/Jessica N. Leal*<br>Jessica N. Leal<br>Attorneys for Defendant<br>EXXclaim Capital Partners I, LP |