

faegredrinker.com

**Timothy E. Grimsrud**
Partner
tim.grimsrud@faegredrinker.com
612 766 8925 direct

Faegre Drinker Biddle & Reath LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, Minnesota 55402
+1 612 766 7000 main
+1 612 766 1600 fax

December 22, 2020                                                             **By Electronic Case Filing**

Judge Vincent Chhabria
United States District Court, Northern District of California
Courtroom 4, 17th Floor
450 Golden Gate Avenue,
San Francisco, CA 94102

Re:    *Case Nos. 2:19-CV-05645-VC and 2:20-CV-02829-VC*

Dear Judge Chhabria:

      Pursuant to the Court's instructions at the December 17, 2020 hearing, Boston Scientific Corp., Boston Scientific Scimed, Inc., and nVision Medical Corp. (collectively "Boston Scientific") respectfully submit this Letter Brief addressing: (1) the consequences of BioCardia, Inc.'s admitted lack of ownership in the alleged rights at issue; and (2) the ineffectiveness of BioCardia's attempted notices of voluntary dismissal under Rule 41.

**I.**     **Each of BioCardia's Claims Should be Dismissed for Failure to State a Claim Under Rule 12(b)(6), Not for Lack of Standing Under Rule 12(b)(1).**

      Dismissal under Rule 12(b)(1) for lack of standing is only appropriate where the Court lacks subject matter jurisdiction under Article III of the Constitution. *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000) (holding that standing "pertain[s] to a federal court's subject-matter jurisdiction under Article III, . . . [and therefore is] properly raised in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1)"). In contrast, when Article III standing is satisfied but a plaintiff lacks prudential standing, dismissal should be under Rule 12(b)(6). *Arakaki v. Lingle*, 477 F.3d 1048, 1056 (9th Cir. 2007); *Maya v. Centx Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011) ("Though lack of statutory standing requires dismissal for failure to state a claim, lack of Article III standing requires dismissal for lack of subject matter jurisdiction."); *Vaughn v. Bay Envtl. Mgmt., Inc.*, 567 F.3d 1021, 1024 (9th Cir. 2009) ("[A] dismissal for lack of statutory standing is properly viewed as a dismissal for failure to state a claim rather than a dismissal for lack of subject matter jurisdiction"); *SurvJustice Inc. v. DeVos*, No. 18-CV-00535-JSC, 2019 WL 1434141, at *4 (N.D. Cal. Mar. 29, 2019) ("[D]istrict courts in [the 9th] circuit consider challenges to prudential standing in the context of motions to dismiss under Rule 12(b)(6), not under Rule 12(b)(1).").

      Here, it should be undisputed that BioCardia has Article III standing and that dismissal under Rule 12(b)(1) would not be appropriate. As BioCardia represented to this Court: "No party has challenged BioCardia's *Article III standing* to bring its claims. That is because 'the Supreme Court has held . . . that *a parent company does have Article III standing* on the basis

of injury to a subsidiary.'" (*BioCardia I*, Dkt 144 at 2 n.1 (emphasis added) (quoting *In re Neurontin Mkt. & Sales Practices Litig.*, 810 F.Supp.2d 366, 369 (D.Mass. 2011) (discussing *Franchise Tax Bd. Of Calif. V. Alcan Aluminum Ltd.*, 493 U.S. 331, 335-36 (1990)).) Thus, BioCardia, Inc.'s status as the parent of BioCardia Lifesciences Inc. and assertions of alleged injury clearly satisfy the injury requirement for Article III standing and negate any basis for a Rule 12(b)(1) dismissal. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Rather, the issues here relate to BioCardia's lack of ownership in the rights at issue, which is a failure to prove an element of its claims and/or a lack of prudential standing, both of which require dismissal under Rule 12(b)(6).

**Breach of Contract.** The issue of whether a party possesses enforceable rights under a contract is an essential element for breach of contract. The Ninth Circuit has therefore held that "[w]hether a plaintiff possesses legally enforceable rights under a contract is a question **on the merits** rather than a question of constitutional standing." *Lindsey v. Starwood Hotels & Resorts Worldwide Inc.*, 409 F. App'x 77, 78 (9th Cir. 2010) (emphasis added); *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, 975 F.3d 770, 776 n.4 (9th Cir. 2020) ("[W]hether Claimants possess legally enforceable rights under [an] agreement is a question of the merits rather than one of constitutional standing."). Multiple district courts have followed the reasoning of *Lindsey* and *Volkswagen*. *See, e.g., Torrey Pines Logic, Inc. v. Gunwerks, LLC*, No. 19-CV-02195-H-DEB, 2020 WL 6321569, at *3 (S.D. Cal. Oct. 28, 2020). Boston Scientific is not aware of any contrary authority on this point. Accordingly, the Court should dismiss BioCardia's contract claims on the merits under Rule 12(b)(6).

**Trade Secret.** A plaintiff's lack of ownership of the asserted trade secrets also requires dismissal on the merits under Rule 12(b)(6) for the same reason: ownership of the alleged trade secret is a required element of a trade secret misappropriation claim. The federal trade secret statute states: "***An owner*** of a trade secret that is misappropriated may bring a civil action under this subsection." 18 U.S.C. § 1836(b)(1).[1] This is an instance of Congress specifying in a statute which parties are permitted to sue, often referred to as "statutory standing," an aspect of prudential standing. *Ray Charles Found. v. Robinson*, 795 F.3d 1109, 1119-20 (9th Cir. 2015).

In *Lexmark International, Inc. v. Static Control Components, Inc.*, the Supreme Court rejected the label of "statutory standing" and made clear that "the absence of a valid . . . cause of action does not implicate subject-matter jurisdiction, i.e., the court's statutory or constitutional power to adjudicate the case." 572 U.S. 118, 128 n.4 (2014); *accord Pierce v. Ducey*, 965 F.3d 1085, 1090-91 (9th Cir. 2020) ("[W]hether a particular plaintiff falls within the class of plaintiffs whom Congress has authorized to sue under a federal statute is an inquiry that normally does not implicate the court's statutory or constitutional power to adjudicate the case."). Applying *Lexmark* in the trade secret context means that BioCardia's lack of ownership is not a standing defect, but a defect on the merits. As one district court recently explained:

> The defendants also move to dismiss the Complaint for lack of standing. . . . Usually, a Rule 12(b)(1) motion is addressed before a Rule 12(b)(6) motion because the former

---

[1] As BioCardia concedes, ownership of the trade secrets at issue is also an element under the California Uniform Trade Secret Act. (*BioCardia I*, Dkt. 112 at ¶173.)

> affects the Court's subject matter jurisdiction. However, what the defendants describe as a question of standing is, in fact, a question about whether the plaintiffs can state a claim under the law, a question formerly known as statutory standing. The question whether the plaintiffs "owned" or "possessed" the alleged trade secrets is not a question of constitutional standing, but a question whether the plaintiffs can state a claim under either the DTSA or New York state law.

*Zirvi v. Flatley*, 433 F. Supp. 3d 448, 458 n.5 (S.D.N.Y. 2020) (citations omitted); *see also Advanced Fluid Sys., Inc. v. Huber*, 28 F. Supp. 3d 306, 320 n.5 (M.D. Pa. 2014) ("[T]he parties' ownership arguments are more appropriately considered pursuant to Rule 12(b)(6) as part of the court's merits analysis."), *aff'd*, 958 F.3d 168 (3d Cir. 2020).  While the Ninth Circuit has not yet addressed this issue in the trade secret context, it has in the copyright context, reaching the same conclusion.  *Minden Pictures, Inc. v. John Wiley & Sons, Inc.*, 795 F.3d 997, 1001 (9th Cir. 2015) ("[T]he Rule 12 motion to dismiss should have been brought under Rule 12(b)(6) for failure to state a claim rather than under Rule 12(b)(1) for lack of jurisdiction, for the issue [of whether plaintiff owns the copyright goes to] statutory rather than Article III standing.").  The Federal Circuit reached the same conclusion in the patent context.  *Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*, 925 F.3d 1225, 1235–36 (Fed. Cir. 2019) ("[F]ollowing *Lexmark*, [] courts have concluded that motions to dismiss based on 'statutory standing' defects are properly brought under Rule 12(b)(6) rather than Rule 12(b)(1) in recognition of the fact that such defects are not jurisdictional.").

Accordingly, BioCardia's claims for trade secret misappropriation should also be dismissed under Rule 12(b)(6) because BioCardia cannot satisfy a required element of its claim.  *See, e.g., California Police Activities League v. California Police Youth Charities, Inc.*, No. C 08-1991-PJH, 2009 WL 537091, at *4 (N.D. Cal. Mar. 3, 2009) ("The court finds that the second cause of action must be dismissed for failure to state a claim.  The FAC fails to allege facts supporting all the elements required for a claim of misappropriation of trade secrets—most notably the factual basis of ownership of the trade secret.").  Again, Boston Scientific is not aware of any contrary authority.

**Correction of Inventorship.**  As discussed above, BioCardia, Inc. has Article III standing to assert correction of inventorship as the parent company and sole shareholder of BioCardia Lifesciences.  However, as a matter of prudential standing, "the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties*.*" *Franchise Tax Bd. of Calif. v. Alcan Aluminium Ltd.*, 493 U.S. 331, 335–36 (1990); *Weisel Partners LLC v. BNP Paribas*, No. C 07-6198 MHP, 2008 WL 3977887, at *3 (N.D. Cal. Aug. 26, 2008).  In the shareholder-subsidiary context, this consideration has given rise to the "shareholder standing rule." *In re Neurontin Mktg. & Sales Practices Litig.*, 810 F. Supp. 2d 366, 369–70 (D. Mass. Aug. 31, 2011).  Under this rule, "[w]rongdoing to a subsidiary does not confer [prudential] standing upon the parent company, even where the parent is the sole shareholder of the subsidiary." *Id.* (citation omitted).  Thus, while BioCardia has Article III standing to assert a claim for correction of inventorship, it lacks prudential standing.

The law is clear that prudential standing is properly addressed through 12(b)(6) dismissal, as both the Ninth Circuit and Federal Circuit have held. *Arakaki*, 477 F.3d at 1056; *Maya*, 658 F.3d at 1068; *Lone Star Silicon Innovations*, 925 F.3d at 1235-36. Accordingly, BioCardia's correction of inventorship claim, like its breach of contract and trade secret misappropriation claims, should be dismissed under Rule 12(b)(6), not 12(b)(1).

Boston Scientific is not aware of any contrary authority on this issue either. The closest case we have found as even approaching a contrary holding is *Eastwood v. Molecular Defense Corp.*, which dismissed an inventorship claim for lack of standing despite an alleged shareholder interest. 373 F.Supp. 3d 502, 507-09 (S.D.N.Y. 2019). But *Eastwood* is easily distinguishable because the shareholder interest in *Eastwood* was attenuated and at least "twice removed," where the plaintiffs were shareholders of one entity that was in turn a shareholder of a different entity, which in turn held an ownership interest in the patent in question. *Id.*; *see also* at 507 ("The plaintiffs ***do not*** allege that they own shares in . . . the entity the plaintiffs claim own the [patents]. Rather, the plaintiffs assert that the Eastwood Trust owns shares in companies, such as APC, that own an interest in MDH, and that MDH has an interest in [the entities that own the patents].") (emphasis added). Conversely, in this case BioCardia, Inc. is the parent of its wholly-owned subsidiary, and therefore has a direct financial interest in the subsidiary and its purported ownership interests in the patents in question. Accordingly, because BioCardia, Inc. has Article III standing but not prudential standing, the Court should dismiss BioCardia Inc.'s correction of inventorship claims for failure to state a claim under Rule 12(b)(6).

**II.     BioCardia's Post-Answer Notices of Voluntary Dismissal Without Prejudice Under Rule 41 Are Improper.**

The notices of voluntary dismissal filed by BioCardia were improper and should be vacated. Under Rule 41(a), a party may unilaterally dismiss an action only by filing a voluntary dismissal "***before the opposing party serves either an answer*** or a motion for summary judgment." Fed. R. Civ. P. 41(a)(1)(A) (emphasis added). Rule 41(c) similarly provides for unilateral dismissal of a counterclaim only "***before a responsive pleading is served***." Fed. R. Civ. P. 41(c) (emphasis added). Here, Boston Scientific Corporation, Boston Scientific Scimed, and Fortis had previously answered BioCardia's counterclaims in *BioCardia I*, (Dkt. 46), and nVision had previously answered BioCardia's complaint in *BioCardia II*, (Dkt. 51). Accordingly, BioCardia no longer has the ability to voluntarily dismiss its claims as of right.

At the December 17 hearing, BioCardia argued that it was permitted to voluntarily dismiss its claims in *BioCardia I* and *II* because BioCardia had recently amended its claims and the defendants had not yet answered the amended pleadings. BioCardia's argument contradicts the plain language of Rule 41 and has been repeatedly rejected by courts that have addressed it. For example, while the Ninth Circuit has not yet addressed the issue, the Fourth Circuit expressly rejected BioCardia's argument in *Armstrong v. Frostie Co.*, 453 F.2d 914 (4th Cir. 1971). The Fourth Circuit held that the plaintiff's efforts to interpret Rule 41(a)(1) to somehow allow for such a dismissal "misconceive[d] the purpose and policy behind Rule 41(a)(1)(i)," which is "designed to permit a disengagement of the parties at the behest of the plaintiff only in the early stages of a suit, before the defendant has expended time and effort in the preparation of his case." *Id.* at 916.

- 5 -                                                                                         December 22, 2020

      Furthermore, district courts in the Ninth Circuit have consistently adopted *Armstrong* and rejected attempts by a party to voluntarily dismiss an amended pleading after a party has answered the original pleading.  See *Sanchez v. Seterus, Inc.*, No. 17-CV-01183-HRL, 2017 WL 4355146, at *3 (N.D. Cal. Oct. 2, 2017) ("This Court agrees with and adopts the reasoning in *Armstrong*.  Accordingly, Sanchez's purported notice of dismissal without prejudice is vacated."); *Milota v. Hexion Specialty Chemicals Canada, Inc.*, Case No. 3:13-CV-00909-HZ, 2015 WL 1737302, at *4 (D. Or. Apr. 16, 2015) ("This Court adopts the reasoning in *Armstrong* and finds that Plaintiff cannot voluntarily dismiss MSC America from the case under Rule 41(a)(1)(A)(i) because MSC America filed an answer to the original complaint."); *Aana v. Pioneer Hi-Bred Int'l, Inc.*, No. CIV 12-00231-LEK, 2014 WL 819158, at *3 (D. Haw. Feb. 28, 2014) ("[I]n light of the fact that Defendants all answered the original Complaint, Plaintiffs cannot voluntarily dismiss their current claims by filing a notice of dismissal pursuant to Rule41(a)(1)(A)(i).").  As the district court explained in *Aana*: "The purpose of Rule 41(a)(1)(A)(i), however, is to allow a plaintiff to voluntarily withdraw his case before the defendant expends significant time and resources on the ***case***, not just on the version of the plaintiff's complaint currently before the district court."  2014 WL 819158, at *3.

      In short, by the time BioCardia filed its notices of voluntary dismissal, Rules 41(a)(1) and 41(c) were no longer applicable, and BioCardia's claims could only be dismissed by Court order under Rule 41(a)(2).  Moreover, it is clear that Boston Scientific and the other defendants would clearly be prejudiced by a dismissal without prejudice—they have been litigating the case for over a year and have pending motions to dismiss BioCardia's claims on the merits and with prejudice.[2]  Indeed, it would cause defendants severe prejudice if BioCardia, Inc. were to now dismiss its claims at this late stage and try to relitigate its case in *BioCardia III*.  Accordingly, just as district courts in the Ninth Circuit have done in similar circumstances, the Court should vacate BioCardia's notices of voluntary dismissal in *BioCardia I* and *II*.[3]

Respectfully submitted,

*s/Timothy E. Grimsrud*

Timothy E. Grimsrud

---

[2] BioCardia's dismissal of its counterclaim in *BioCardia I* would not impact the pending declaratory judgment claims, which, as discussed at the December 17 hearing, should be summarily adjudicated in Boston Scientific's favor given BioCardia's admission that it does not own any of the rights it threatened to assert.

[3] In addition to withdrawing its counterclaims, BioCardia stated that it also "withdraws its pending motion to substitute." (Dkt. 148.)  Accordingly, while BioCardia cannot voluntarily dismiss its case under Rule 41, it appears that BioCardia has withdrawn its motion to substitute.