ROBERT E. FREITAS (SBN 80948)
rfreitas@fawlaw.com
DANIEL J. WEINBERG (SBN 227159)
dweinberg@fawlaw.com
FREITAS & WEINBERG LLP
303 Twin Dolphin Drive, Suite 600
Redwood Shores, California 94065
Telephone:    (650) 593-6300
Facsimile:    (650) 593-6301

Attorneys for Defendant
EXXclaim Capital Partners I, LP

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BIOCARDIA, INC.,<br><br>             Plaintiff,<br><br>     v.<br><br>nVISION MEDICAL CORPORATION, ARBORETUM VENTURES IV, LP, ASTIA ANGEL nVISION LLC, CATALYST HEALTH VENTURES (PF), L.P., CATALYST HEALTH VENTURES FOLLOWON FUND, L.P., CATALYST HEALTH VENTURES III, L.P., CATALYST HEALTH VENTURES, LP, CHV INVESTMENTS, LLC, CHV PARTNERS FUND III, L.P., CHV-E PARTNERS III, L.P., DRAPER ASSOCIATES INVESTMENTS, LLC, DRAPER ASSOCIATES RISKMASTER FUND II, LLC, DRAPER ASSOCIATES RISKMASTERS FUND III, LLC, EXCELESTAR VENTURES I, LLC, EXXCLAIM CAPITAL PARTNERS I, LP, FOGARTY INSTITUTE FOR INNOVATION, GOLDEN SEEDS nVISION MEDICAL, LLC, LIFE SCIENCES ANGEL INVESTORS VIII, L.L.C., LMNVC, LLC, AND SERAPH nVISION, LLC,<br><br>             Defendants. | No.  3:20-CV-02829-VC<br><br>(Related Case No. 3:19-cv-05645-VC)<br><br>**SURBHI SARNA AND EXXCLAIM CAPITAL PARTNERS I, LP'S JOINT MOTION FOR SANCTIONS PURSUANT TO THE COURT'S INHERENT AUTHORITY, FED. R. CIV. P. 16, AND 28 U.S.C. § 1927**<br><br>Date:     March 4, 2021<br>Time:     2:00 p.m.<br>Ctrm.:    3, 17th Floor<br>Judge:     Hon. Vince Chhabria |

# TABLE OF CONTENTS

**Page**

FACTUAL BACKGROUND ................................................................................... 2

    A.    BioCardia's Pre-Litigation Threats ........................................................ 2

    B.    BioCardia Files Counterclaims Against Ms. Sarna .............................. 4

    C.    The Court's Scheduling Order In The Boston Scientific Case ............. 5

    D.    BioCardia Files Its First Amended Counterclaims In The Boston Scientific Case ...................................................................................... 5

    E.    BioCardia End Runs The Scheduling Order And Files The nVision Case ........... 5

    F.    BioCardia Continues To Amend Its Pleadings ...................................... 5

    G.    Ms. Sarna's Motion To Dismiss Based On Claim Ownership ............. 8

    H.    BioCardia Files The BioCardia Lifesciences Case And Rule 17 Motion............. 9

    I.    BioCardia Files Dismissals In The Middle Of The December 17 Hearing ........ 10

II.    BIOCARDIA AND ITS COUNSEL SHOULD BE SANCTIONED ............................ 11

    A.    BioCardia's Multiyear Assertion Of Legal Rights It Never Had Is Sanctionable Under the Court's Inherent Power .................................. 12

    B.    BioCardia's Filing Of The Second Amended Counterclaims And Second Amended Complaint Should Be Sanctioned Under Rule 16 .............................. 20

    C.    Mr. Feinberg's Actions Unnecessarily Multiplied Proceedings ......................... 21

III.    ATTORNEYS' FEES AND COSTS ARE AN APPROPRIATE SANCTION ............. 22

    A.    The Entire Litigation Has Been A Waste Of Time ............................... 23

    B.    The Section 1927 Sanction Should Be Imposed From The Point After The Filing Of The Initial Counterclaims In The Boston Scientific Action................. 24

    C.    Alternatively, The Section 1927 Sanction Should Be Imposed From The Time Ms. Sarna First Raised A Question Regarding The Assignments.............. 25

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Ayers v. City of Richmond,*
    895 F.2d 1267 (9th Cir. 1990) ..................................................................20

*Belliveau v. Thomson Fin. Inc.,*
    313 Fed. Appx. 49 (9th Cir. 2009)............................................................21

*United States v. Blodgett,*
    709 F.2d 608 (9th Cir. 1983) ...................................................................21

*Caldwell v. Unified Capital Corp.,*
    77 F.3d 278 (9th Cir. 1996) .....................................................................12

*Chambers v. Nasco, Inc.,*
    502 U.S. 32 (1991)...................................................................................12

*Chavarria v. Mgmt. & Training Corp.,*
    No. 16-CV-0617, 2016 WL 11621564 (S.D. Cal. Aug. 25, 2016).........23

*Commercial Space Mgmt. Co. v. Boeing Co.,*
    193 F.3d 1074 (9th Cir. 1999) .................................................................11

*Evon v. Law Offices of Sidney Mickell,*
    688 F.3d 1015 (9th Cir. 2012) .................................................................17

*F.J. Hanshaw Enters. v. Emerald River Dev., Inc.,*
    244 F.3d 1128 (9th Cir. 2001) ...........................................................17, 23

*Fink v. Gomez,*
    239 F.3d 989 (9th Cir. 2001) ...................................................................12

*FM Indus., v. Citicorp Credit Servs., Inc.,*
    614 F.3d 335 (7th Cir. 2010.....................................................................22

*In re Girardi,*
    611 F.3d 1027 (9th Cir. 2010) .................................................................22

*Glasser v. Blixseth,*
    649 Fed. Appx. 506 (9th Cir. 2016)........................................................25

*Haeger v. Goodyear Tire & Rubber Co.,*
    813 F.3d 1233 (9th Cir. 2016) .................................................................12

*Johnson v. Mammoth Recreations, Inc.,*
    975 F.2d 604 (9th Cir. 1992) ................................................20

*Kaass Law v. Wells Fargo Bank, N.A.,*
    799 F.3d 1290 (9th Cir. 2015) ................................................22

*Lahiri v. Universal Music & Video Distrib. Corp.,*
    606 F.3d 1216 (9th Cir. 2010) ................................................17

*Leon v. IDX Sys. Corp.,*
    464 F.3d 951 (9th Cir. 2006) ................................................17

*Martin Family Trust v. Heco/Nostalgia Enter. Co.,*
    186 F.R.D. 601 (E.D. Cal. 1999) ................................................20

*Mirch v. Frank,*
    266 Fed. Appx. 586 (9th Cir. 2008) ................................................24

*O.F. Mossberg & Sons, Inc. v. Timney Triggers, LLC,*
    955 F.3d 990 (Fed. Cir. 2020) ................................................12, 24

*Phonometrics, Inc. v. Westin Hotel Co.,*
    350 F.3d 1242 (Fed. Cir. 2003) ................................................12

*Primus Auto. Fin. Servs. v. Batarse,*
    115 F.3d 644 (9th Cir. 1997) ................................................12

*Riddle & Assocs., P.C. v. Kelly,*
    414 F.3d 832 (7th Cir. 2005) ................................................25

*Sanchez v. Brawley Elementary School Dist.,*
    No. 14-CV-564 GPC (PCL), 2016 WL 3074404 (S.D. Cal. Jun. 1, 2016) ................................................20

*Special Situations Fund III QP, L.P. v. Brar,*
    No. 14-cv-04717-SC, 2015 U.S. Dist. LEXIS 38825
    (N.D. Cal. Mar. 25, 2015) ................................................13

*Matter of Yagman,*
    796 F.2d 1165 (9th Cir. 1986) ................................................24, 25

**Federal Statutes**

28 U.S.C. § 1927 ................................................*passim*

35 U.S.C. § 256 ................................................4, 5

35 U.S.C. § 285 ................................................12, 24

**Other Authorities**

6A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* §
 1531 (1990) ..................................................................................................................20

Fed. R. Civ. P 11(b)(1)-(3) ...............................................................................................13

Fed. R. Civ. P. 11(b) .........................................................................................................15

Fed. R. Civ. P. 16(f) ..............................................................................................12, 20, 21

Fed. R. Civ. P. 17(a)(3) .................................................................................................9, 24

Fed. R. Civ. P. 41(a)(1)(A)(i) ...........................................................................................11

Fed. R. Civ. P. 12(b)(1) .....................................................................................................11

Fed. R. Civ. P. 12(b)(6) ..........................................................................................11, 20, 24

Fed. R. Civ. P. 16 ....................................................................................................20, 21, 23

Fed. R. Civ. P. 17 ................................................................................................. *passim*

Fed. R. Civ. P. 26 ..............................................................................................................25

Fed. R. Civ. P. 26(a)(1)(A)(ii) ..........................................................................................16

Fed. R. Civ. P. 37(b)(2)(A)(ii)-(vi) ..................................................................................20

Fed. R. Civ. P. 41(d) .........................................................................................................24

## NOTICE OF MOTION AND MOTION FOR SANCTIONS

TO ALL PARTIES AND COUNSEL OF RECORD: PLEASE TAKE NOTICE that on Thursday, March 4, 2021 at 2:00 p.m., or at such other date and time as set by the Court,[1] in Courtroom 17 of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, California, Surbhi Sarna and EXXclaim Capital Partners I, LP ("EXXclaim") will, and hereby do, move for sanctions pursuant to the Court's inherent authority, Federal Rule of Civil Procedure 16(f), and 28 U.S.C. section 1927, against BioCardia, Inc. ("BioCardia"), Feinberg Day Kramer Alberti Lim Tonkovich & Belloli LLP ("Feinberg Day"), Peter Altman, and Ian N. Feinberg.

Ms. Sarna and EXXclaim ask that the Court award them their reasonable attorneys' fees and costs incurred as a result of the reckless and knowingly frivolous litigation that has been pursued in this Court, including BioCardia's assertion of legal rights it never had, BioCardia's violations of the Court's prior orders, and the presentation and prosecution of claims by Mr. Feinberg that unreasonably and vexatiously multiplied the proceedings.

## POINTS AND AUTHORITIES IN SUPPORT OF MOTION

On January 4, 2021, counterclaimant BioCardia, Inc. voluntarily dismissed its counterclaims against Surbhi Sarna in *Boston Scientific Corporation, et al. v. BioCardia, Inc.*, Case No. 3:19-cv-05645-VC (the "*Boston Scientific* case"). At roughly the same time, plaintiff BioCardia voluntarily dismissed its claims for relief against EXXclaim in *BioCardia, Inc. v. nVision Medical Corporation, et al.*, Case No. 3:20-cv-02829-VC (the "*nVision* case"). These dismissals brought to a close approximately 20 months of needless threats and litigation by a company—BioCardia—that had no legal claims against any of the counterdefendants and

---

[1] A previously filed joint motion for sanctions was denied without prejudice to one being filed at "a more appropriate time." *See* Case No. 3:19-cv-05645-VC, Dkt. No. 153; Case No. 3:20-cv-02829-VC, Dkt. No. 99. BioCardia dismissed its counterclaims against Ms. Sarna and its claims against EXXclaim on January 4, 2021 pursuant to Rule 41(a)(1)(A)(i). This motion must be filed within 14 days of the dismissals. *See* Civil L.R. 7-8(d). The cases remain pending as to other defendants and counterdefendants. It is expected that additional sanctions motions will be filed at a later date. Ms. Sarna and EXXclaim do not oppose the hearing on this motion being continued so that the motion is heard at the same time as those motions.

defendants. The absence of assertable legal rights could have and should have been determined long before Ms. Sarna moved to dismiss BioCardia's counterclaims. The wrongful assertion of legal rights by BioCardia and its litigation counsel has exposed the movants to substantial expense and has proven to be a complete waste of time.

To make matters worse, BioCardia's claims and counterclaims have been prosecuted in a manner that showed disregard for this Court's orders and a lack of diligence on other issues. From the improper filing of the counterclaim against Ms. Sarna in the *Boston Scientific* case, to the wrongful filing of the *nVision* case by the same improper plaintiff in an end-run of the *Boston Scientific* scheduling order, to the vast expansion of the pleadings from 15 pages to 147 pages in disregard of the limited leave to amend allowed when BioCardia's prior pleadings were challenged, to the filing of the new *BioCardia Lifesciences* case, to the "lunchtime dismissal" of the *Boston Scientific* and *nVision* cases in an attempt to avoid an anticipated dismissal with prejudice, BioCardia has expanded and unnecessarily complicated these cases at every turn.

BioCardia obviously failed to proceed in a manner consistent with its corporate history and contemporaneously acknowledged in its SEC filings, and did not take the simple steps needed to understand the nVision acquisition that is central to its claims. A lack of diligence produced various false starts and the needless multiplication of these proceedings. BioCardia, Feinberg Day, Dr. Altman and Mr. Feinberg should be sanctioned for what transpired.

## FACTUAL BACKGROUND

### BioCardia's Pre-Litigation Threats.

On April 9, 2019, BioCardia's counsel, Ian Feinberg, sent a letter to Ms. Sarna, the Founder and Chief Executive Officer of nVision Medical Corporation, and Desiree Ralls-Morrison, the Vice President, General Counsel and Corporate Secretary of Boston Scientific Corporation. *See* BSC Dkt. No.[2] 1, Ex. A. The letter began by stating that "[w]e are counsel to BioCardia, Inc.," and asserted that "a patent on which [Ms. Sarna is] the sole listed inventor and

---

[2] Citations to "BSC Dkt. No." refer to the docket entries in the *Boston Scientific* case, and citations to "nVC Dkt. No." refer to the docket entries in the *nVision* case.

which was assigned by [her] to nVision Medical Corporation in fact belongs to BioCardia." *Id*. This was the first in a long line of false claims that BioCardia had rights arising from Ms. Sarna's employment with a different company, all in the name of an implausible claim that Ms. Sarna's success in establishing, building, and ultimately selling nVision was the result of a single brief conversation with BioCardia Chief Executive Officer Peter Altman nearly ten years before.

The April 9 letter went on to assert that "at the beginning of [Ms. Sarna's] employment with BioCardia, [she] signed a copy of the standard BioCardia Employment, Confidential Information and Invention Assignment Agreement," that "[i]n addition to having a valid claim for ownership of the '571 Family, BioCardia also has good claims for breach of the BioCardia agreement and misappropriation of trade secrets." Mr. Feinberg concluded with the claim that BioCardia had a right to recover for unjust enrichment in "the amount Boston Scientific paid for nVision, since [nVision] was clearly built on the '571 Family rightfully belonging to BioCardia." BSC Dkt. No. 1, Ex. A. After BioCardia learned that "the '571 Family" technology had been abandoned, BioCardia continued to tell the same story based on different facts and a different purported "disclosure" of the technology to Ms. Sarna.

It is understood by all now, and it should have been understood by Mr. Feinberg then, that BioCardia never had any rights against Ms. Sarna or any of the more than twenty other counterdefendants and defendants sued in two separate cases.

BioCardia's attempt to intimidate Ms. Sarna and Boston Scientific continued in another letter sent on May 20, 2019 suggesting the parties engage in "pre-litigation mediation." BSC Dkt. No. 1 ¶ 53. When these efforts failed, BioCardia filed a demand for arbitration against Ms. Sarna on August 6, 2019, falsely claiming that it had employed her. *Id*. ¶ 52. Following the threats and the arbitration filing, Boston Scientific Corporation, Boston Scientific Scimed, Inc. and Fortis Advisors LLC filed a complaint for declaratory judgment on September 6, 2019, *see* BSC Dkt. No. 1, and the arbitration was dismissed in favor of proceeding solely in this Court.

**BioCardia Files Counterclaims Against Ms. Sarna.**

BioCardia filed the first incarnation of its *Boston Scientific* counterclaims on October 31,

2019. *See* BSC Dkt. No. 22. BioCardia alleged, among other things, that "Ms. Sarna started consulting with BioCardia on September 15, 2008 pursuant to a Consulting Agreement executed on August 27, 2008, and started as a full-time employee of BioCardia on November 3, 2008 pursuant to the BioCardia standard Employment Agreement which she signed on October 29." *Id.* ¶ 17. None of that was true. Ms. Sarna was never employed by BioCardia, as it now admits. *See* BSC Dkt. No. 121 at 4-5 ("The 'BioCardia, Inc.' that is a party to that agreement is not the counterclaimant. . . . [T]he counterclaimant did not use the name 'BioCardia, Inc.'s until October 2016, eight years after the employment agreement was signed, and long after Ms. Sarna's employment ended.").

The counterclaims set forth counts for Correction of Inventorship under 35 U.S.C. § 256, Breach of Written Contract, Misappropriation of Trade Secrets, Imposition of Constructive Trust on Consideration Paid for nVision, and Imposition of Constructive Trust on Sarna Patent Family. BSC Dkt. No. 22, Counts I, II, III, IV and V. Central to each of these counterclaims was the allegation that Dr. Altman disclosed to Ms. Sarna certain pages of "BioCardia Lab Notebook No. 21 signed and dated March 23, 2000," *id.* ¶ 30, and that Ms. Sarna used the information disclosed in the notebook secretly to obtain patents and build a successful medical startup company that was later acquired for $150,000,000 by Boston Scientific. As all now agree, BioCardia did not start using the name BioCardia until 2016, sixteen years after the alleged "BioCardia Lab Notebook No. 21" was signed and dated.

The parties met and conferred following the filing of BioCardia's counterclaims. BioCardia elected to file an amended set of counterclaims as a result. *See* BSC Dkt. No. 35 at 7. The parties made clear to the Court that "[o]utside of these pleadings, no other parties, claims, or defenses are expected to be added or dismissed," and the parties proposed February 10, 2020 as the deadline for amending pleadings. *Id*.

### The Court's Scheduling Order In The *Boston Scientific* Case.

On December 16, 2019, the Court entered the Scheduling Order in the *Boston Scientific* case. *See* BSC Dkt. No. 45. Consistent with the parties' proposal, the order set February 10, 2020

as the "Last Day to Amend Pleadings." *Id*. at 2.

**BioCardia Files Its First Amended Counterclaims In The *Boston Scientific* Case.**

BioCardia filed its first amended counterclaims on December 11, 2019. *See* BSC Dkt. No. 43. The amended counterclaims repeated the false claims made in the original counterclaims: (a) that Ms. Sarna executed an employment agreement with BioCardia in 2008 (she hadn't), (b) that, pursuant to that agreement, Ms. Sarna agreed to assign all inventions to BioCardia (she hadn't), (c) that the inventions Ms. Sarna conceived were originally embodied in the "BioCardia Lab Notebook No. 21 signed and dated March 23, 2000" (they weren't), and (d) that by using the information purportedly acquired from said notebook and filing patent applications later assigned to nVision Medical Corporation, Ms. Sarna breached an employment agreement with BioCardia  and misappropriated BioCardia's trade secrets.

**BioCardia End Runs The Scheduling Order And Files The *nVision* Case.**

At some point after the February 10, 2020 deadline to amend pleadings passed, BioCardia apparently made the determination that its pursuit of Ms. Sarna and the other counterdefendants was, on its own, just not enough, perhaps because the counterdefendants did not capitulate to BioCardia's attempted holdup. As a result, on April 23, 2020, BioCardia filed a new lawsuit against nVision. For all practical intents, the lawsuit was duplicative of the counterclaims previously filed in the *Boston Scientific* case, with claims for Correction of Inventorship under 35 U.S.C. § 256, Breach of Contract, Misappropriation of Trade Secrets under California Uniform Trade Secrets Act, and Misappropriation of Trade Secrets under the Defendant Trade Secrets Act. *See* nVC Dkt. No. 1, Counts I, II, III and IV.

**BioCardia Continues To Amend Its Pleadings.**

After the filing of Ms. Sarna's motions related to the First Amended Complaint in the *Boston Scientific* case, *see, e.g.,* BSC Dkt. Nos. 47 & 48, and disputes related to the sufficiency of BioCardia's amended trade secret disclosure, BioCardia moved the Court for an order modifying the Scheduling Order and for leave to file a second amended complaint. BSC Dkt. No. 60. Ms. Sarna's motion to dismiss raised an important question: whether BioCardia had plausibly

alleged an interest in the inventions at the heart of the litigation. BioCardia asserted in its complaint that "BioCardia has standing to seek correction of inventorship because Dr. Altman and Dr. Stertzer each assigned 'all of their right, title and interest in and to all inventions they made at BioCardia, and all resulting patents.'" BSC Dkt. No. 43 ¶ 61. Ms. Sarna's motion argued that "BioCardia did not allege any facts explaining how or when Dr. Altman or Dr. Stertzer assigned his rights in anything relevant . . . to BioCardia" and pointed out that "no instrument by which either Dr. Altman or Dr. Stertzer assigned any rights of any kind to BioCardia is attached" to the counterclaim. BSC Dkt. No. 4.

A short time later, BioCardia filed a First Amended Complaint in the *nVision* case. *See* nVC Dkt. No. 22. The amended complaint added 19 new defendants, each of which was a former nVision shareholder, including EXXclaim. The former shareholders had been previously identified in BioCardia's certificate of interested entities. BSC Dkt. No. 4. The new complaint largely tracked the prior claims and counterclaims asserted by BioCardia across both lawsuits. However, BioCardia now asserted that a constructive trust should be imposed against the former nVision shareholders "even if they did not commit a wrongful act" because the shareholders allegedly were unjustly enriched as a result of Ms. Sarna's and nVision's wrongdoing. *Id.* ¶ 72.

With a series of pending motions[3] on the Court's docket, the parties appeared virtually for a hearing on July 23, 2020. The Court gave BioCardia one "last chance" to get its pleadings in order.

> I view this as really giving BioCardia a major break here. And, you know, in terms of allowing you to continue to oppose the claim splitting argument despite your failure to have presented anything meaningful so far on that and, you know, in terms of allowing you to add the trade secrets in the first lawsuit. I view this as giving

---

[3] In addition to Ms. Sarna's motions to dismiss and strike the First Amended Complaint in the *Boston Scientific* case, BSC Dkt. Nos. 47 & 48, the Court also addressed at the July 23 hearing BioCardia's motion to amend the Scheduling Order and for leave to file a second amended counterclaim (BSC Dkt. No. 60), BioCardia's motion to consolidate the *Boston Scientific* case with the *nVision* case (BSC Dkt. No. 76), and EXXclaim's motion to dismiss, or alternatively, to strike portions of the First Amended Complaint (nVC Dkt. No. 43). The Court described procedural state of the two cases as a "morass" in need of "untangle[ing.]" BSC Dkt. No. 118-3 at 4.

> you a huge break, and BioCardia is not going to get any more
> breaks in this lawsuit for, you know, fail—you know, failings,
> litigation failings, procedural failings. This is BioCardia's last
> chance. There will be no more—there will be no more giving you a
> break in the exercise of discretion.

BSC Dkt. No. 118-3 at 43; *see also id.* at 4 ("[W]hen you look at the totality of BioCardia's

litigation conduct in this case, you think about all of the issues together, you know, BioCardia's

litigation conduct has been atrocious[.]").

  The Court's order granted BioCardia limited leave to amend its counterclaims: "Leave to

file an amended answer and counterclaims in the first lawsuit is limited to the two matters just

discussed: bolstering the allegations regarding correction of inventorship and including

allegations regarding the additional trade secrets. No additional parties, claims, or allegations

may be inserted." BSC Dkt. No. 95. The Court granted Ms. Sarna's motion to dismiss "as to

Count I," *id.* at 1, which raised issues with the sufficiency of the counterclaim's allegations of

BioCardia's rights in the inventions.

  On September 11, 2020, BioCardia filed its Second Amended Complaint in the *nVision*

case. nVC Dkt. No. 75. On September 14, 2020, BioCardia filed its Second Amended Answer to

Complaint and Counterclaims in the *Boston Scientific* case. BSC Dkt. No. 112. Despite the

limited leave to amend, BioCardia's second amended pleadings exploded. The second amended

counterclaims included an additional 138 new paragraphs and 132 additional new pages.

*Compare* BSC Dkt. No. 112 (223 paragraphs over 147 pages) *with* BSC Dkt. No. 43 (85

paragraphs over 15 pages). The second amended complaint in the *nVision* case was no less

voluminous, setting forth an additional 128 new paragraphs and 100 additional new pages.

*Compare* nVC Dkt. No. 75 (237 paragraphs over 139 pages) *with* nVC Dkt. No. 22 (109

paragraphs over 28 pages). Not surprisingly, the additional new allegations in the two pleadings

were not limited in the manner ordered by the Court. The new amended allegations included

many not authorized by the Court, such as those related to breach of contract (*see, e.g.,* BSC Dkt.

No. 112 ¶¶ 23-28, 153-170); trade secret misappropriation allegations against Boston Scientific

(*see, e.g., id.* ¶ 174, subsections (g) and (h) of ¶¶ 178-194); direct liability allegations against

Boston Scientific and Fortis (*see, e.g., id.* ¶¶ 153-170, 206-219); and disgorgement allegations (*see, e.g., id.* ¶¶ 157, 222). The filing of the second amended counterclaims and second amended complaint in the two cases produced a flood of new motion practice, including motions to dismiss, joint motions to strike, and joint motions for sanctions.

**Ms. Sarna's Motion To Dismiss Based On Claim Ownership.**

Ms. Sarna filed a motion to dismiss the second amended *Boston Scientific* counterclaim on September 25, 2020. *See* BSC Dkt. No. 121 at 1-6. Ms. Sarna explained that BioCardia was not a party to any contract with her and does not own any of the rights on which BioCardia's claims are based. Ms. Sarna's investigation of the corporate history of BioCardia revealed that "neither Hippocratic Engineering, Inc., the company to which Dr. Stertzer is alleged to have made an assignment, nor the company formerly known as 'BioCardia, Inc.,' to which Dr. Altman is alleged to have made his assignment in July 1999, is the counterclaimant." *Id*. at 1. Moreover, "[t]he company by which Ms. Sarna was employed from 2008-2012 is also not the counterclaimant." *Id*.

The corporate histories obtained by Ms. Sarna's counsel from the Delaware Secretary of State revealed that "the company known as Hippocratic Engineering in April 1999 is now called CareDx." *Id*. at 2. That company was incorporated in Delaware in December 1998 and has never been dissolved or merged out of existence. *Id*. It was known as "BioCardia, Inc." between April 23, 1999 and June 18, 2002—the time period during which Dr. Altman's lab notebook was "signed and dated," and the assignments from Dr. Altman and Dr. Stertzer were allegedly made. *Id*. CareDx is a stranger to this proceeding.

Ms. Sarna's investigation also revealed that BioCardia was incorporated in Delaware in 1994 as NAM Corporation. *Id*. BioCardia used the public shell of a company formerly known as Tiger X Medical to become a public company in 2016. *Id*. On October 24, 2016, after the merger, the company begin using the name "BioCardia, Inc." for the first time. *Id*. Ms. Sarna also discovered that her former employer is a company now known as BioCardia Lifesciences, Inc., a wholly-owned subsidiary of BioCardia. *Id.* at 4.

Ms. Sarna's motion established that "[t]he pleaded breach of contract theory (that Ms. Sarna was employed by and contracted with counterclaimant BioCardia) is not true." *Id*. at 5. It also demonstrated "that counterclaimant BioCardia is not the owner of the alleged trade secrets on which Count III is based." *Id*. at 6. Ms. Sarna's motion was based on publicly available information her counsel gathered. The corporate histories were pieced together without access to the directors and officers of BioCardia.[4]

**BioCardia Files The *BioCardia Lifesciences* Case And Rule 17 Motion.**

One month after Ms. Sarna's motion was filed, BioCardia and its counsel responded, but not by challenging any of the facts discovered by Ms. Sarna's team or the conclusions they drew from the facts. First, BioCardia Lifesciences, Inc. filed a new lawsuit against Ms. Sarna, EXXclaim and all of the others previously named in the *Boston Scientific* and *nVision* cases. *See* Dkt. No. 1 in Case No. 3:20-cv-07510-VC. The new lawsuit combines all of the prior parties and allegations with a new plaintiff.

Second, BioCardia moved pursuant to Federal Rule of Civil Procedure 17(a)(3) to join BioCardia Lifesciences, Inc. as an additional *Boston Scientific* counterclaimant, or to substitute BioCardia Lifesciences, Inc. for BioCardia. *See* BSC Dkt. No. 123 at 2. BioCardia did not dispute the summary of its own corporate history as described in Ms. Sarna's motion or challenge the conclusion that BioCardia was neither a party to the employment agreement nor an assignee of the inventions and trade secrets allegedly misappropriated. *Id*. at 3 ("Until the September 24, 2020 filing . . . [BioCardia] had not realized that at least some, and perhaps all, of the intellectual property in this case technically belongs to its wholly-owned subsidiary, BioCardia Lifesciences, Inc."); 5 ("[T]he entity which owns the claims asserted in this Action is BioCardia Lifesciences (the former BioCardia 2), not its parent, BioCardia 3 (the former Tiger X) which owns all the stock in BioCardia Lifesciences.").

---

[4] As Mr. Feinberg later said with reference to understanding the corporate history, "clearly you could have figured it out because Jessica Leal, Mr. Freitas's colleague, now with the antitrust division, figured it out, so it's possible to figure it out." Declaration of Robert E. Freitas ("Freitas Decl."), Ex. A at 22.

BioCardia sought to skirt its assertion of rights that it did not own by resort to feeble excuses. BioCardia asserted that Dr. Altman did not think of the companies as separate legal entities. BSC Dkt. No. 123 at 6 ("Dr. Altman never thought of them as two entities and thus did not distinguish between them."); 5 ("Since the 2016 transaction, BioCardia [] and BioCardia Lifesciences have been operating as a single company with consolidated financials." *[sic]*); 6 ("To Dr. Altman, BioCardia Lifesciences and BioCardia, Inc. were, for all intents and purposes, the same entity."). But Dr. Altman signed SEC filings in which the separateness of these companies was made explicit. BSC Dkt. No. 113-11. BioCardia also relied on its size and science-focused leaders as an excuse. *See id.* at 5 ("BioCardia, Inc. (including BioCardia Lifesciences) only has 27 employees."); *see also* Freitas Decl., Ex. A at 19 ("[O]ne has to understand that BioCardia is a two-dozen-person company who—it's run by its founders, and everybody is a scientist, not a lawyer."); *id.* at 21 ("Here we've got an unsophisticated, small company that went public in a way that I hadn't actually understood."). BioCardia's explanation for its lawyers' failure to understand the facts was similarly unconvincing. Disavowing the basic obligation imposed on counsel in all cases, and ignoring the various events that sharpened the need for focus on the facts, BioCardia insisted that there had been no reason to investigate.

Perhaps unconvinced by its own excuses, BioCardia withdrew the Rule 17 motion mid-hearing, after a discussion of the "understandable mistake" standard by which BioCardia's Rule 17 motion was doomed. BSC Dkt. No. 148, nVC Dkt. No. 97.

### BioCardia Files Dismissals In The Middle Of The December 17 Hearing.

The parties appeared for another virtual hearing on December 17, 2020. The Court primarily heard arguments on Ms. Sarna's motion to dismiss and BioCardia's Rule 17 motion, but various other motions to dismiss, strike and for sanctions[5] also were on calendar. *See* BSC Dkt. Nos. 116, 117, 118, 119, 121 and nVC Dkt. Nos. 76, 77, 79. The Court described BioCardia's failure to identify the proper plaintiff as "unreasonable," "inexcusable," and

---

[5] The sanctions motions were "denied without prejudice to the parties moving for sanctions at a more appropriate time." BSC Dkt. No. 153 and nVC Dkt. No. 99.

"reckless." Freitas Decl., Ex. A at 4.

As the argument continued, the Court examined whether the dismissal of the counterclaims in the *Boston Scientific* case and the complaint in the *nVision* case should be under Rule 12(b)(6) or Rule 12(b)(1) and called upon the parties to submit further briefing on the issue the following week. *See* BSC Dkt. No. 153 and nVC Dkt. No. 99. But during the lunchtime recess, BioCardia filed voluntary dismissals under Federal Rule of Civil Procedure 41(a)(1)(A)(i) and withdrew its Rule 17 motions in a desperate bid to avoid a Rule 12(b)(6) dismissal. *See* BSC Dkt. No. 148 and nVC Dkt. No. 97.

Although the Court later vacated the voluntary dismissals because they "were clearly improper with respect to the defendants who answered" and did not distinguish between answering parties and non-answering parties, on January 4, 2021, BioCardia filed new voluntary dismissals, dismissing without prejudice Ms. Sarna from the *Boston Scientific* case and EXXclaim from the *nVision* case. *See* BSC Dkt. No. 161 and nVC Dkt. No. 107.

**BIOCARDIA AND ITS COUNSEL SHOULD BE SANCTIONED.**

Civil L.R. 7-8(d) provides that "[u]nless otherwise ordered by the Court, no motion for sanctions may be served and filed more than 14 days after entry of judgment by the District Court." The dismissals filed pursuant to Rule 41(a)(1)(A)(i) on January 4, 2021 were "effective on filing and no court order is required." *Commercial Space Mgmt. Co. v. Boeing Co.*, 193 F.3d 1074, 1077 (9th Cir. 1999). Accordingly, now is the time for Ms. Sarna and EXXclaim to move for sanctions against BioCardia, Feinberg Day, Dr. Altman and Mr. Feinberg.

Ms. Sarna and EXXclaim seek sanctions against BioCardia, Feinberg Day and Dr. Altman under the Court's inherent power. They seek sanctions against BioCardia and Feinberg Day under Federal Rule of Civil Procedure 16(f). Finally, they seek sanctions against attorney Ian Feinberg under 28 U.S.C. section 1927.[6]

---

[6] Because Ms. Sarna and EXXclaim were voluntarily dismissed, they are not "prevailing parties," and are therefore not entitled to recovery under 35 U.S.C. section 285 against BioCardia. *See O.F. Mossberg & Sons, Inc. v. Timney Triggers, LLC*, 955 F.3d 990, 993 (Fed.

**BioCardia's Multiyear Assertion Of Legal Rights It Never Had Is Sanctionable Under the Court's Inherent Power.**

> Courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates. These powers are governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.

*Chambers v. Nasco, Inc.*, 502 U.S. 32, 43 (1991) (citations and internal quotation marks omitted). The Court's inherent power is broad and applies to "a full range of litigation abuses." *Fink v. Gomez*, 239 F.3d 989, 992 (9th Cir. 2001). "Before awarding sanctions pursuant to its inherent power, the court must make an express finding that the sanctioned party's behavior constituted or was tantamount to bad faith." *Haeger v. Goodyear Tire & Rubber Co.*, 813 F.3d 1233, 1244 (9th Cir. 2016).

"Bad faith" may include "recklessness when combined with an additional factor such as frivolousness, harassment, or an improper purpose." *Fink*, 239 F.3d at 994; *Primus Auto. Fin. Servs. v. Batarse*, 115 F.3d 644, 649 (9th Cir. 1997) ("A finding of bad faith is warranted where an attorney 'knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent.'") (quoting *In re Keegan Mgmt. Co., Sec. Litig.*, 78 F.3d 431, 436 (9th Cir. 1996)). A court may impose sanctions under its inherent power against a non-party. *See Caldwell v. Unified Capital Corp.*, 77 F.3d 278, 282 (9th Cir. 1996) (affirming sanctions imposed personally against corporate principal). The totality of misconduct in the *Boston Scientific* and *nVision* case establishes the "bad faith" required to sustain sanctions against BioCardia, Feinberg Day and Dr. Altman.

**BioCardia's assertion of legal rights it did not have calls for an award of sanctions.** For nearly 20 months, BioCardia has made threats based on, and eventually pursued, claims BioCardia now concedes it did not own. This was not an oversight by a scientist-CEO, a little detail that slipped through the cracks of a small startup company, or something based on facts

---

Cir. 2020). Recovery under section 285 is not available against counsel. *See Phonometrics, Inc. v. Westin Hotel Co.*, 350 F.3d 1242, 1248-49 (Fed. Cir. 2003).

that did not require investigation. BioCardia's corporate history is central to the assertion of the contract and intellectual property rights-based claims it made because those claims arose from written agreements that had to be alleged and ultimately proved at trial. And while confusion over a repeatedly recycled name may be a convenient crutch in hindsight, the incontrovertible truth is that BioCardia and its directors and officers, including Dr. Altman, knew better.

BioCardia is a public company. Contemporaneous with the filing and assertion of claims based on rights allegedly held by BioCardia, not BioCardia Lifesciences, BioCardia made filings with the Securities and Exchange Commission, signed by Dr. Altman, that made explicit the separateness of BioCardia and BioCardia Lifesciences. Those filings also made clear that the name "BioCardia, Inc." was not used by BioCardia until October 2016, long after any of the conduct, assignments, or employment relevant to these cases concluded. BSC Dkt. No. 113-11 at 20. Dr. Altman signed the SEC filings on behalf of the company. That undertaking makes Dr. Altman the maker of those statements and knowledgeable of their content. *See Special Situations Fund III QP, L.P. v. Brar*, No. 14-cv-04717-SC, 2015 U.S. Dist. LEXIS 38825, at *8 (N.D. Cal. Mar. 25, 2015) ("Courts have consistently held that the signer of a corporate filing is its 'maker,' because signing a filing implies 'ultimate control' over its contents.") (quoting *SEC v. e-Smart Techs., Inc.*, 31 F. Supp. 3d 69, 80 (D.D.C. 2014)).

BioCardia and Feinberg Day had an obligation to make a reasonable inquiry supporting the factual contentions in its pleadings. *See* Fed. R. Civ. P 11(b)(1)-(3). BioCardia admits that no investigation into whether BioCardia was a proper counterclaimant or plaintiff took place. BSC145 at 2 ("But BioCardia's failure to investigate was entirely reasonable[.]"). An investigation, as Mr. Feinberg acknowledged, would have revealed the correct answer. *See* Freitas Decl., Ex. A at 22 (saying "clearly you could have figured it out because Jessica Leal . . . figured it out"). But Mr. Feinberg curiously asserted that BioCardia "had no reason to look." *Id.* at 20. Of course it did.

Count I of the counterclaims asserts Dr. Stertzer and Dr. Altman are inventors of certain nVision patents and applications. *See* BSC Dkt. No. 112 ¶ 98. The allegations of trade secret

misappropriation similarly turn on the work of Dr. Stertzer and Dr. Altman. *See id.* ¶¶ 178.d.-193.d. (alleging BioCardia "is the owner of this trade secret because the two individuals who conceived of and developed the trade secrets, Drs. Peter Altman and Simon Stertzer, both assigned all right, title, and interest in the intellectual property to [counterclaimant], or its predecessor Hippocratic Engineering"). Before making claims derived from the intellectual property rights of Dr. Stertzer or Dr. Altman, it was essential that BioCardia investigate and be able to substantiate a claim to ownership of those rights. In the context of the claims made by BioCardia, that required the identification of specific written assignments by Dr. Stertzer and Dr. Altman, and the development of a specific factual theory justifying a claim that BioCardia was the direct or indirect assignee.

BioCardia's claim regarding Dr. Stertzer rested on an assignment he made to Hippocratic Engineering in April 1999. *Id.* ¶ 106-07. "Hippocratic Engineering" is not "BioCardia, Inc.," so a focus on the Stertzer assignment would have led to an inquiry as to whether or why BioCardia might claim to be, or to be the assignee of, Hippocratic Engineering.

Had BioCardia and its counsel traced the corporate history of Hippocratic Engineering, it would not have led to BioCardia. BSC Dkt. No. 121 at 1-3. The company then known as Hippocratic Engineering is today an independent public company called CareDx, Inc. *See id.* Rather than investigate the corporate history, BioCardia apparently did nothing until Ms. Sarna filed her motion. *See* BSC Dkt. No. 123 at 3 ("Until the September 24, 2020 filing Surbhi Sarna's [motion], plaintiff BioCardia, Inc. had not realized that at least some, and perhaps all, of the intellectual property in this case technically belongs to its wholly-owned subsidiary."). The counterclaim and complaint say no more than that Hippocatic Engineering is a "predecessor" of BioCardia. *See, e.g.*, BSC Dkt. No. 112 at ¶ 178(d); nVC Dkt. No. 75 at ¶ 175(d). But this is not true, and when challenged by Ms. Sarna, this allegation was not defended. Instead, BioCardia offered the new and different theory that CareDx assigned the rights it got from Dr. Stertzer to BioCardia Lifesciences, Inc., not BioCardia, in 2002. *See* BSC Dkt. No. 127 at 2. The 2002 transaction, the effect of which is disputed, was not mentioned in BioCardia's pleadings before

Ms. Sarna's motion was filed, and there is no indication it was ever identified by BioCardia or its counsel. There was no mistake involving the name BioCardia, Inc., there was a simple failure to make a proper investigation of the ownership of the Stertzer rights. As explained below, that failure was not limited to a deficiency in the pre-suit process. It continued to the point at which Ms. Sarna's motion set forth all of the relevant facts.

The claim to ownership of the Altman rights was based on an allegation of an assignment by Dr. Altman to BioCardia. In discovery, the only Altman assignment identified by BioCardia was an assignment to "BioCardia, Inc." (now CareDx, Inc.) in 1999, 17 years before BioCardia adopted the name BioCardia, Inc. When the Altman assignment was produced in discovery early in 2020, BioCardia had been acknowledging in its SEC filings for several years that BioCardia never used the name "BioCardia, Inc." until October 2016. *See, e.g.,* BSC Dkt. No. 113-11 at 20.

BioCardia was obviously "corporately" aware of its naming history (someone, likely Dr. Altman, is responsible for the recycling of BioCardia, Inc.), and Dr. Altman has been employed by one or more of the relevant companies at all times. There is no excuse for BioCardia to tell the SEC and the investing public that it adopted the name "BioCardia, Inc." in 2016, but claim in this Court that a 1999 assignment to "BioCardia, Inc." was not readily identifiable as having been made to another company. BioCardia and Dr. Altman knew all of the relevant facts at all times, and there were numerous points at which Feinberg Day should have investigated the ownership of the legal rights asserted in the case.

BioCardia and its counsel were rule bound to investigate before filing the counterclaims in the *Boston Scientific* case and the complaint in the *nVision* case. *See, e.g.,* Fed. R. Civ. P. 11(b). They needed a specific factual theory and a specific factual foundation for a claim of ownership of the intellectual property rights on which the claims BioCardia asserted depended. Conspicuously, there have never been any declarations describing the process by which the investigatory path led to the Stertzer and Altman declarations, or how things went astray once it did. To the contrary, BioCardia's "no reason to look" argument appears to be an acknowledgement that, well, no one looked.

Because the claims based on the Stertzer and Altman rights necessarily turned on writings that would provide an essential part of BioCardia's proof, BioCardia also had a duty to disclose the assignments pursuant to Rule 26(a)(1)(A)(ii). The assignment instruments are undoubtedly documents that BioCardia would have to "use to support its claims or defenses," and they were subject to initial disclosure under Rule 26(a)(1)(A)(ii). Again, BioCardia's obligations required that it pass eyeballs over these documents, and doing so would clearly have triggered an investigation that would have brought BioCardia's assertion of claims it did not own to an end, as Ms. Sarna's investigation did.

BioCardia and its counsel also should have investigated the foundation of BioCardia's claim after Ms. Sarna filed her first motion to dismiss (addressing the first amended counterclaim) in January 2020. The motion specifically asserted that "BioCardia did not allege any facts explaining how or when Dr. Altman or Dr. Stertzer assigned his rights in anything relevant to the '571 Patent to BioCardia." BSC Dkt. No. 47 at 4. Again, this called on BioCardia and its counsel to develop and articulate a specific factual theory by which ownership of the Stertzer and Altman rights could be said to belong to BioCardia, and again it is clear that a focus on the issues would have resulted in a conclusion that any relevant rights were owned by others. But rather than make a proper investigation, BioCardia chose to rest on the conclusory allegations of the counterclaim.

While the motion was pending, Ms. Sarna served requests for production of documents addressed to the assignment issues. Ms. Sarna specifically asked for the assignment instruments on which a claim to ownership of the Stertzer and Altman rights was based. *See* Freitas Decl., Ex. B. Nothing could have placed a clearer or more specific burden to investigate on BioCardia. At this point, BioCardia was not only required to make a proper investigation, it had a formal duty to produce the instruments on which it relied. And if it looked at them, it would have known that Dr. Stertzer never made an assignment to BioCardia, and that Dr. Altman could not have.

When BioCardia produced documents in response to those requests, it became clear to Ms. Sarna's team that Dr. Stertzer's assignment was not to BioCardia and that Dr. Altman's July

1999 assignment to "BioCardia, Inc." was not to the entity that Dr. Altman knew did not assume the name "BioCardia, Inc." until 2016. But it took a motion by Ms. Sarna to bring the issue to the fore. *See* BSC Dkt. No. 95 at 1.

BioCardia's frivolous assertion of legal rights it did not have justifies a sanction under the Court's inherent power. In *Lahiri v. Universal Music & Video Distrib. Corp.*, 606 F.3d 1216 (9th Cir. 2010), the Ninth Circuit affirmed sanctions under the court's inherent power (and section 1927) under circumstances eerily similar to BioCardia's assertion of intellectual property rights it did not have. In *Lahiri*, the plaintiff asserted copyright infringement claims. The plaintiff had no interest in the copyrighted work because it was music composed for hire, a fact that would have been easily confirmed had the plaintiff's "experienced copyright lawyer" "made even a cursory investigation into the circumstances of Lahiri's 21-year old composition of Thoda." 606 F.3d at 1221. BioCardia's counsel failed to make an investigation into BioCardia's legal rights despite the centrality of those rights to the case and the numerous circumstances unambiguously imposing a duty to investigate. The assertion of claims BioCardia did not own was frivolous, admitted now to lack a colorable basis. The failure properly to assess ownership in a timely and proper manner was reckless. Inherent power sanctions are appropriate.

Inherent power also enables courts "to manage their cases and courtrooms effectively and to ensure obedience to their orders." *F.J. Hanshaw Enters. v. Emerald River Dev., Inc.*, 244 F.3d 1128, 1136 (9th Cir. 2001). "[I]t is clear that a 'willful' violation of a court order does not require proof of mental intent such as bad faith or an improper motive, but rather, it is enough that a party acted deliberately." *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1035 (9th Cir. 2012). Courts may sanction parties that have "engaged deliberately in deceptive practices that undermine the integrity of judicial proceedings." *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir. 2006) (quotation marks omitted). BioCardia has repeatedly engaged in conduct and deceptive tactics designed to thwart the effective administration of justice.

BioCardia's false claim that it owned the claims it asserted was accompanied by another inexcusable "party" error, the failure to identify nVision Medical Corporation, rather than Boston

Scientific Corporation, as a defendant. When she filed her initial motion to dismiss, Ms. Sarna also filed a motion to strike various references to "defendant nVision" in the counterclaim. *See* BSC Dkt. No. 48. BioCardia had not sued nVision, but it referred to nVision as a "defendant" in several places in its pleading. The motion to strike provided a clear and specific reason for BioCardia to decide whether nVision should be a "defendant."

 nVision was Ms. Sarna's employer at the time of a number of the actions and alleged actions for which she has been sued, and BioCardia eventually decided to sue nVision, as explained below. When the question of what to do with nVision was raised by Ms. Sarna's motion to strike, however, BioCardia did not oppose the motion. BSC Dkt. No. 56. Later, BioCardia claimed that it, or at least Mr. Feinberg, believed that nVision had been merged into Boston Scientific. But no one ever said that, and a simple trip to the website of the Delaware Secretary of State or the California Secretary of State would have shown that nVision, the "survivor" of a typical "reverse triangular merger" was still in existence. *See* BSC Dkt. No. 63-2.[7] It would not have required one steeped in corporate law to conclude based on the publicly available transactional documents that nVision was the survivor of the transaction. (BioCardia's allegation that "Boston Scientific merged nVision into itself" was denied when Boston Scientific Corporation and others answered the counterclaims. *See* BSC Dkt. 46 ¶ 53.) It appears that BioCardia did not check these records, either, claiming instead that it relied on the fact that Boston Scientific sued it, and offering a dubious interpretation of Boston Scientific's accurate and neutral reference to a "merger." The former claim was particularly disingenuous, given that Boston Scientific sought a declaratory judgment against BioCardia after BioCardia threatened Boston Scientific and claimed to be the owner of rights allegedly violated by Boston Scientific.

 In a case management conference statement filed in December 2019 in the *Boston Scientific* case, the parties informed the Court that "[o]utside of these pleadings, no other parties,

---

[7] The phrase "reverse triangular merger" may conjure images of impenetrably complex corporate activity, but a reverse triangular merger is a standard process that, by definition, results in the "acquired" company, nVision in this instance, being the "surviving" entity. *See* https://en.wikipedia.org/wiki/Mergers_and_acquisitions.

claims, or defenses are expected to be added or dismissed." BSC Dkt. No. 35 at 7. The Court

subsequently set February 10, 2020 as the deadline for the amendment of pleadings. BSC Dkt.

No. 45 at 2. Long after the deadline passed, and after failing to oppose Ms. Sarna's motion to

strike, BioCardia decided to add nVision to the dispute. Unable to amend its pleadings in the

*Boston Scientific* case, BioCardia filed a new lawsuit against nVision, which suit BioCardia

subsequently amended to add the nineteen former nVision shareholders, despite the claim

splitting problems presented by the filing of the new lawsuit and BioCardia's previously stated

intention to name them in the *Boston Scientific* case. *See* BSC Dkt. No. 78-3. At this point, the

Court was moved to describe BioCardia's litigation conduct as "atrocious." BSC Dkt. No. 118-3

at 4; *see also id.* at 6 ("I view the decision to file the second lawsuit, the claim-splitting issue, as

quite a bit more egregious than the failure to add the additional trade secrets to the complaint in

the first lawsuit."). Despite this, the Court allowed BioCardia a final "last chance" to get things

right. *See id.* at 43.

From there, BioCardia only proceeded to make matters worse. First, it filed a vastly

expanded second amended counterclaim in the *Boston Scientific* case and second amended

complaint in the *nVision* case in violation of the Court's limited leave to amend. *See* BSC Dkt.

No. 95 at 2. The amended pleadings contained various unauthorized amendments and errors,

from some of which BioCardia decided to run. *See, e.g.,* nVC Dkt. No. 84 at 13 (admitting that

the pleaded pursuit of a constructive trust against EXXclaim and the former nVision

shareholders was "inadvertent" and "unintended"); BSC Dkt. No. 118 at 4-6. Then, when

confronted with the evidence presented in Ms. Sarna's motion to dismiss, counsel simultaneously

filed a new lawsuit for BioCardia Lifesciences, Inc. and moved the Court under Rule 17 to add

BioCardia Lifesciences to the *Boston Scientific* case. After it was suggested during the December

17 hearing on those motions that "the most charitable description" of "the totality of the

plaintiff's conduct throughout this case" was "buffoonery," Freitas Decl., Ex A at 26, and it

appeared the Court was considering dismissal with prejudice, BioCardia filed "clearly improper"

voluntary dismissals of the *Boston Scientific* counterclaim and the *nVision* complaint during the

lunchtime recess of the motion hearing and withdrew its Rule 17 motions. This was another attempted end run, this time of the Rule 12(b)(6) dismissal (with its claim preclusion implications) that BioCardia saw coming. The assertion of rights by a party without any, the filing and withdrawal of motions, the filing and refiling of voluntary dismissals, and the disobedience of Court orders are all a product of a lack of proper diligence, and more.

### BioCardia's Filing Of The Second Amended Counterclaims And Second Amended Complaint Should Be Sanctioned Under Rule 16.

Under Federal Rule of Civil Procedure 16(f), "the court may issue any just orders, including those authorized by Rule 37(b)(2)(A)(ii)-(vi), if a party or its attorney: fails to obey a scheduling or other pretrial order." "[V]iolations of Rule 16 are neither technical nor trivial, but involve a matter most critical to the court itself: management of its docket and the avoidance of unnecessary delays in the administration of its cases." *Martin Family Trust v. Heco/Nostalgia Enter. Co.*, 186 F.R.D. 601, 603 (E.D. Cal. 1999). As the Ninth Circuit has emphasized, a pretrial order "is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded . . . without peril." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 610 (9th Cir. 1992). "Whether the party and/or its counsel disobeyed the court order intentionally is impertinent; sanctions may be imposed when the parties and their counsel disobey a court order." *Sanchez v. Brawley Elementary School Dist.*, No. 14-CV-564 GPC (PCL), 2016 WL 3074404, at *1 (S.D. Cal. Jun. 1, 2016) (citing *Lucas Auto. Eng'g, Inc. v. Bridgestone/Firestone, Inc.*, 275 F.3d 762, 769 (9th Cir. 2001). *See also Ayers v. City of Richmond*, 895 F.2d 1267, 1270 (9th Cir. 1990); 6A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1531 (1990) ("The fact that a pretrial order was violated is sufficient to allow some sanction.").

BioCardia's violations of the Court's orders justify a sanction under Rule 16(f) against BioCardia and Feinberg Day. The filing of the *nVision* case occurred because the deadline to amend pleadings in the *Boston Scientific* case had passed. Subsequent to filing the *nVision* case, BioCardia both moved to relate and consolidate the two cases. *See* BSC Dkt. Nos. 70 & 76. The filing of the *nVision* case was an end run of the Scheduling Order in the *Boston Scientific* case.

BioCardia also violated the Court's order granting limited leave to amend the first amended counterclaim. *See* BSC Dkt. No. 118 at 4-6. The order granting leave to amend stated that leave was "limited to the two matters just discussed: bolstering the allegations regarding correction of inventorship and including allegations regarding the additional trade secrets." BSC Dkt. No. 95 at 2. The order further stated "[n]o additional parties, claims, or allegations." *Id.* BioCardia disregarded the Court's order and its warnings during the July 23, 2020 hearing and launched an all-out assault. The second amended pleadings in the *Boston Scientific* and *nVision* cases exploded in volume, increasing from 15 pages to 147 pages and from 28 pages to 139 pages. The amendments included new allegations and theories related to breach of contract, trade secret misappropriation against Boston Scientific, direct liability against Boston Scientific and Fortis, and damages. BioCardia's violations of the Court's orders merit a sanction under Rule 16.

### Mr. Feinberg's Actions Unnecessarily Multiplied Proceedings.

An attorney "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. "The imposition of sanctions under section 1927 requires a finding that counsel acted 'recklessly or in bad faith.'" *United States v. Blodgett*, 709 F.2d 608, 610 (9th Cir. 1983) (quoting *Barnd v. City of Tacoma*, 664 F.2d 1339, 1343 (9th Cir. 1982)). "'Bad faith is present when an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent.'" *Id.* (quoting *Estate of Blas v. Winkler*, 792 F.2d 858, 860 (9th Cir. 1986)); *Belliveau v. Thomson Fin. Inc.*, 313 Fed. Appx. 49, 50 (9th Cir. 2009) (stating "recklessness satisfies this standard") (citing *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1107 (9th Cir. 2002)). "[A] finding that the attorney recklessly or intentionally misled the court is sufficient to impose sanctions under § 1927, and a finding that the attorneys recklessly raised a *frivolous* argument which results in the multiplication of the proceedings is also sufficient to impose sanctions under § 1927." *In re Girardi*, 611 F.3d 1027, 1062 (9th Cir. 2010) (citation omitted) (emphasis in original).

Section 1927 does not authorize the imposition of sanctions against a law firm, and it does not allow the imposition of vicarious liability. *See, e.g., Kaass Law v. Wells Fargo Bank, N.A.*, 799 F.3d 1290, 1295 (9th Cir. 2015) ("We believe that if Congress had intended to permit federal courts to impose sanctions against law firms pursuant to 28 U.S.C. § 1927, it would have included an express authorization to do so in the statute."); *FM Indus., v. Citicorp Credit Servs., Inc.*, 614 F.3d 335, 340 (7th Cir. 2010) ("Liability under § 1927 is direct, not vicarious."). Ms. Sarna and EXXclaim may seek section 1927 sanctions only against Mr. Feinberg.

The assertion of legal rights by BioCardia was frivolous at all times. The failure to conduct a proper pre-suit investigation is not actionable under section 1927, but the subsequent failures and the multiplication of proceedings that resulted are. A simple investigation of the assignments and corporate histories would have revealed that BioCardia was not a proper claimant, and so would a proper investigation at any or all of the points at which BioCardia was called on to investigate. Had BioCardia taken the step taken by Ms. Sarna's team at any point, the proceedings would have been brought to a halt without the need for further investigation or expenditure of money in the defense of claims by BioCardia.

The Court observed during the December 17, 2020 hearing that the failure to identify the proper claimant was "unreasonable," "inexcusable," and "reckless." Freitas Decl., Ex. A at 4. The presentation of the frivolous counterclaims in the *Boston Scientific* case and claims in the *nVision* case unreasonably and vexatiously multiplied the proceedings that would have been brought to a conclusion if BioCardia had taken up the investigation the facts clearly required.

**ATTORNEYS' FEES AND COSTS ARE AN APPROPRIATE SANCTION.**

"As a function of [inherent] power, courts can dismiss cases in their entirety, bar witnesses, award attorney's fees and assess fines." *F.J. Hanshaw Enters. V. Emerald River Dev., Inc.*, 244 F.3d 1128, 1136 (9th Cir. 2001) (citing *Chambers*, 502 U.S. at 44-45). Rule 16 authorizes monetary sanctions for violations of a court's scheduling and pretrial orders. *See* Fed. 16(f); *see also Chavarria v. Mgmt. & Training Corp.*, No. 16-CV-0617, 2016 WL 11621564, at *3 (S.D. Cal. Aug. 25, 2016) ("[Rule 16] specifies that the court must order the party, its

attorney, or both to pay the reasonable expenses—including attorney's fees—incurred because of any noncompliance with this rule."). Section 1927 sanctions are directed to "the excess costs, expenses, and attorneys' fees reasonably incurred" as a result of an attorney's wrongful litigation conduct. Ms. Sarna and EXXclaim respectfully request that the Court sanction BioCardia and its counsel for the attorney's fees and costs incurred in defending the entirety of the *Boston Scientific* and *nVision* cases.

### The Entire Litigation Has Been A Waste Of Time.

An appropriate measure of the relief to be awarded is the attorney's fees and costs incurred by Ms. Sarna and EXXclaim in the defense of these cases. Not all of BioCardia's improper actions caused all of the expense, but the entirety of the proceedings was plainly without basis. Recovery for the full cost of the proceeding is available under the Court's inherent power, and recovery of all or nearly all is available under section 1927. The relief available under Rule 16 is more limited, but covers at least the expense incurred in responding to the Second Amended Counterclaim in the *Boston Scientific* case and the Second Amended Complaint in the *nVision* case.

BioCardia never owned any of the counterclaims or claims asserted in these actions. That fact was knowable at all times. As a consequence, the entire litigation has been a waste of time. Ms. Sarna incurred the substantial expense of conducting discovery about BioCardia's ownership of the claims it asserted, gathering and analyzing the corporate history records from the Delaware Secretary of State, and presenting the corporate history. And Ms. Sarna and EXXclaim have responded to numerous iterations of BioCardia's claims.

The Court observed during the July 2020 hearing that "[i]t may very well be appropriate to require BioCardia to pay the defendants' attorneys' fees that have been incurred as a result of all of [BioCardia's] litigation conduct." BSC Dkt. No. 118-3 at 10. Since then, it has been determined that there was no basis at all for any of BioCardia's claims. It is reasonable and appropriate to sanction BioCardia and its counsel for all of Ms. Sarna's and EXXclaim's attorney's fees and costs incurred from the inception of the litigation to this motion.

Rule 41(d) provides analogous support for relief of this nature. Under Rule 41(d), when "a plaintiff who previously dismissed an action in any court files an action based on or including the same claim against the same defendant," a district court "may order the plaintiff to pay all or part of the costs of that previous action." Fed. R. Civ. P. 41(d). BioCardia would likely argue that Rule 41(d) does not apply here because BioCardia is not the "plaintiff" in the *BioCardia Lifesciences* case, but Rule 41(d) recognizes that when a claim is made, abandoned, and reasserted, it is reasonable to consider the full cost of defending the initial action an appropriate measure of the harm to the defendant. Here, where the lunchtime dismissals were a tactical maneuver intended to avoid the consequences of the Rule 12(b)(6) adjudication BioCardia expected, or the Rule 17(a)(3) finding that the failure to proceed in the name of a proper claimant was not "understandable," the case for anything less as a remedy is extremely weak.[8]

### The Section 1927 Sanction Should Be Imposed From The Point After The Filing Of The Initial Counterclaims In The *Boston Scientific* Action.

"Section 1927 does not apply to initial pleadings, since it addresses only the multiplication of proceedings. It is only possible to multiply or prolong proceedings after the complaint is filed." *Matter of Yagman*, 796 F.2d 1165, 1187 (9th Cir. 1986) (amended 803 F.2d 1085 (1986)). An unpublished Ninth Circuit opinion has allowed section 1927 sanctions for the filing of a third-party complaint "because it cannot arise absent an underlying case," *Mirch v. Frank*, 266 Fed. Appx. 586, 588 (9th Cir. 2008), and the Seventh Circuit has approved the imposition of sanctions beginning with the filing of a counterclaim. *See Riddle & Assocs., P.C. v. Kelly*, 414 F.3d 832, 837 (7th Cir. 2005). But a later unpublished Ninth Circuit case held the opposite. *See Glasser v. Blixseth*, 649 Fed. Appx. 506, 507 (9th Cir. 2016) ("[S]ection [1927] does not allow for the imposition of sanctions based on initial pleadings, such as a

---

[8] By preventing a Rule 12(b)(6) dismissal, the lunchtime dismissals denied Ms. Sarna and EXXclaim "prevailing party" status and the right to proceed against BioCardia under section 285. *See O.F. Mossberg & Sons*, 955 F.3d at 991. BioCardia also likely believed it could avoid claim preclusion by doing so, but it appears to have overlooked important case law in this regard. If the *BioCardia Lifesciences* case reaches the point at which a motion to dismiss is required, BioCardia's assumed theory will be tested.

counterclaim.").

Here, Mr. Feinberg literally began "multiplying" the proceeding by filing the first counterclaims in the *Boston Scientific* case. The *Boston Scientific* case already existed at the time of the filing, so the counterclaim was not the "initial" pleading in the action. There is another consideration applicable here. The filing of the counterclaim was an agreed step to arrange for the efficient adjudication of BioCardia's claims in a single forum. So the mere step of filing the counterclaim is not challenged by the section 1927 aspect of Ms. Sarna's motion.

In the absence of binding Ninth Circuit authority to the contrary, however, any multiplication of proceedings "after the complaint is filed," *see Yagman*, 796 F.2d at 1187, including the improper prosecution of counterclaims BioCardia did not own, should be sufficient. Ms. Sarna therefore seeks recovery for the entire period following the filing of the original counterclaim.

### Alternatively, The Section 1927 Sanction Should Be Imposed From The Time Ms. Sarna First Raised A Question Regarding The Assignments.

Drawing the line immediately "after the [counterclaim]" may seem insufficient to distinguish between the mere act of filing the counterclaim and prosecuting it. An alternative approach would be to award recovery from the point at which a clear post-filing duty to investigate was triggered by events during the litigation. Relying on BioCardia's initial disclosure obligations, or pointing to Ms. Sarna's initial motion to dismiss, provides a point of focus that both involves "multiplication" and provides an objective and distinct post-filing vantage point for an assessment of culpability. BioCardia was required under Rule 26 to prepare initial disclosures soon after filing its counterclaims. As explained above, the assignments by Dr. Stertzer and Dr. Altman were key documents essential to prove BioCardia's ownership of the intellectual property rights on which its claims depended. Had Mr. Feinberg performed a proper investigation at either time, all of the subsequent litigation could have been avoided.

Dated:  January 19, 2021

ROBERT E. FREITAS
DANIEL J. WEINBERG
FREITAS & WEINBERG LLP


*/s/Daniel J. Weinberg*
Daniel J. Weinberg
Attorneys for Surbhi Sarna
and Fortis Advisors LLC